FARM BUREAU MUTUAL INSURANCE COMPANY OF
MICHIGAN v STARK

Docket Nos. 87254, 87255. Argued November 9, 1990 (Calendar
No. 7). Decided April 29, 1991.

Karl Helwig was struck and injured by a moped owned by
Timothy Stark and operated by his minor son, Patrick Stark.
Thereafter, he and his wife, Opal, brought a personal injury
action against the Starks, who, in turn, sought defense and
indemnification from Farm Bureau Mutual Insurance Com-
pany, Timothy Stark's homeowner insurer. Farm Bureau
brought an action in the Marquette Circuit Court against
Timothy and Patrick Stark, seeking a declaration that its
policy provides no coverage for Karl Helwig's injuries and that
it had no duty to defend the Starks. The Starks counterclaimed,
asserting coverage, and the Helwigs intervened. The court,
Raymond J. Jason, J., granted summary disposition for Farm
Bureau. The Court of Appeals, MURPHY, P.J., and GRIFFIN, J.
(MACKENZIE, J., concurring), reversed, concluding that the
clause is ambiguous with respect to mopeds and that the policy
provides coverage (Docket Nos. 109258, 109476). Farm Bureau
appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice
CAVANAGH and Justices LEVIN, BRICKLEY, BOYLE, and RILEY,
the Supreme Court *held:*

The policy does not provide coverage for this claim; Farm
Bureau has no duty to defend or indemnify the insured.

While ambiguous provisions in an insurance contract must
be construed against the insurer and in favor of the insured,
and exclusionary clauses must be strictly construed, the con-
tracts are to be construed according to the sense and meaning
of the terms which the parties have used. If they are clear and
unambiguous, the terms are to be taken and understood in
their plain, ordinary, and popular sense. Any clause in an
insurance contract is valid as long as it is clear, unambiguous
and not in contravention of public policy. In this case, the term
"land motor vehicle," taken and understood in its plain, ordi-
nary, and popular sense, includes a moped. Thus, a moped, as a

land motor vehicle, is unambiguously excluded from the scope of liability coverage.

Reversed.

Justice MALLETT took no part in the decision of this case.

180 Mich App 55; 446 NW2d 866 (1989) reversed.

*Willingham & Coté, P.C.* (by *John A. Yeager, Anthony S. Kogut,* and *Curtis R. Hadley*), for the plaintiff.

*Wietek & Summers, P.C.* (by *Michael G. Summers*), for the defendants.

*Kendricks, Bordeau, Adamini, Keefe, Smith & Girard, P.C.* (by *Dennis H. Girard*), for the intervening defendants.

GRIFFIN, J. This declaratory judgment action requires that we construe a motor vehicle exclusion clause in a homeowner's insurance policy purchased from plaintiff insurance company by one of the defendants. We hold that the policy does not provide coverage for the claim at issue and that plaintiff insurer therefore has no duty to defend or indemnify the insured. Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment of the trial court granting summary disposition in favor of the plaintiff.

I

On August 13, 1985, Karl Helwig was jogging on a bicycle/pedestrian path in Marquette, Michigan, when he was struck and injured by a moped owned by Timothy Stark and operated by his minor son, Patrick Stark. Karl Helwig and his wife, Opal, brought a personal injury action against Timothy and Patrick Stark in Marquette Circuit Court. The Starks, in turn, sought a de-

fense and indemnification pursuant to a homeowner's insurance contract issued to Timothy Stark by the present plaintiff, Farm Bureau Mutual Insurance Company. On April 20, 1987, plaintiff Farm Bureau commenced the instant declaratory judgment action against Timothy and Patrick Stark, seeking a determination that its policy provides no liability coverage for the injuries to Karl Helwig which resulted from the accident, and that it has no duty to defend the Starks in the lawsuit brought by the Helwigs. The Starks counterclaimed, asserting that the insurance contract does provide coverage and that plaintiff Farm Bureau is contractually obligated to defend and indemnify its insureds. The Helwigs subsequently intervened as defendants in this declaratory judgment action.[1]

All of the parties filed motions for summary disposition, under MCR 2.116(C)(10), contending that there was no genuine issue of material fact. The trial court issued an opinion finding that Timothy Stark's moped was excluded from coverage under the homeowner's policy, and that plaintiff had no duty to defend the Starks in the Helwigs' suit. Separate claims of appeal filed by the Starks and the Helwigs were consolidated by the Court of Appeals, which reversed. 180 Mich App 55; 446 NW2d 866 (1989). Pointing out that the motor vehicle exclusion clause in the policy relied upon by plaintiff does not specifically exclude coverage for accidents involving mopeds, the Court of Appeals concluded that the language of the clause is ambiguous with respect to mopeds and held that the policy provides coverage.

Plaintiff's timely application for leave to appeal was granted by this Court. 435 Mich 861 (1990).

---

[1] Except as otherwise required, we hereinafter refer collectively to Timothy Stark, Patrick Stark, Karl Helwig, and Opal Helwig as "defendants."

II

According to its terms, the homeowner's policy issued to Timothy Stark does not provide coverage for personal liability and medical payments to others arising out of the ownership, maintenance, or use of "motor vehicles," and the policy does not apply "to any Recreational Motor Vehicle subject to the Motor Vehicle Registration Act."[2]

A definitions section of the policy explains the meaning of the terms "motor vehicle" and "recreational motor vehicle":

3. DEFINITIONS—SECTION II

\* \* \*

c. "motor vehicle": means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto) but does not include, except while being towed by or carried on a motor vehicle, any of the following: utility, boat, camp or home trailer, recreational motor vehicle, farm trailer, farm tractor, farm implement or, if not subject to

---

[2] The pertinent part of the text reads:

EXCLUSIONS—SECTION II

This policy does not apply:

\* \* \*

(b) under Coverages A and B, to the ownership, maintenance or use, including the loading or unloading of (1) motor vehicles . . . .

\* \* \*

(i) under Coverages A and B, to any Recreational Motor Vehicle subject to the Motor Vehicle Registration Act or while any Recreational Vehicle:
(1) is used to carry persons for a charge;
(2) is used for business purposes;
(3) is rented to others; or
(4) is being operated in any prearranged or organized race, speed contest or other competitions.

motor vehicle registration, any equi[p]ment which is designed for use principally off public roads.

*   *   *

f. "recreational motor vehicles": means (1) a golf cart or snowmobile or (2) if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.

Our task is to decide whether this language unambiguously excludes the moped from coverage.

The Court of Appeals reasoned that because the homeowner's policy in question neither describes the physical characteristics of a "land motor vehicle" nor expressly includes or excludes mopeds from that category, the contract is ambiguous and must be strictly construed against the plaintiff insurer. The panel was persuaded that the rationale employed in an earlier Court of Appeals decision involving a similarly worded exclusion is applicable in this case. It explained:

> This Court in *Westen v Karwat,* 157 Mich App 261; 403 NW2d 115 (1987), was called upon to determine whether similar homeowner's policy language had properly excluded coverage because a moped fell within the policy's definition of a motor vehicle. In *Westen,* the plaintiff was the personal representative of the estate of a girl who died from injuries suffered after she was struck by a moped. The trial court held that a moped was a motor vehicle under the terms of the exclusion in the insurance policy. The policy in *Westen* defined "motor vehicle" almost identically as it is defined in the instant case.
>
> *   *   *
>
> This Court in *Westen* concluded that coverage would be allowed because the term motor vehicle was ambiguous, offering no guidance whatsoever as to whether mopeds fell within the definition.
>
> "[W]e find that the term 'motor vehicle' is ambi-

guous and should be construed against the insurer. Home Owners defines the term 'motor vehicle' by adding the word 'land' and then listing two other vehicles which qualify as motor vehicles and nine vehicles which do not, without any guidance as to whether mopeds qualify. A description of the physical characteristics of a motor vehicle would have been more helpful. Without such a physical description against which to measure a moped and no specific mention of moped in the lists of vehicles included or excluded from the definition of 'motor vehicle' the term is ambiguous and we will construe it against the insurer, allowing insurance coverage for plaintiff's claim." [*Westen, supra,* p 264.] [*Stark, supra,* pp 59-60.]

In the instant case the Court of Appeals noted that another panel of that Court, in *Fire Ins Exchange v Fox,* 167 Mich App 710; 423 NW2d 325 (1988), had reached a result contrary to that in *Westen.* The *Stark* panel distinguished *Fox:*

[T]he policy provision in *Fire Ins Exchange* defined motor vehicle as "a motorized land vehicle, including a trailer, semi-trailer or *motorized bicycle,* designed for travel on public roads." (Emphasis added.) Because the policy language in the instant case is for all intents and purposes identical to the language construed by this Court in *Westen,* and the policy exclusion in this case did not specifically exclude coverage for motorized bicycles designed for travel on public roads, we conclude that plaintiff did not sufficiently exclude coverage for accidents involving mopeds. [*Id.,* pp 60-61.][3]

In rendering its decision, the Court of Appeals

[3] Divergent opinions on the issue at hand have subsequently been reflected in two unpublished Court of Appeals cases. Compare *Allstate Ins Co v Hargrove,* decided October 6, 1989 (Docket No. 109134), with *Allstate Ins Co v Jabro,* decided December 7, 1989 (Docket No. 111060).

cited two principles of construction applicable to insurance policies: (1) that an ambiguous contract provision must be construed against the insurer and in favor of the insured, and (2) that exclusionary clauses in insurance policies are to be strictly construed against the insurer. *Id.,* pp 57-58. While accurate,[4] the rule of strict construction is tempered by the principle that " '[c]ontracts . . . are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.' " *Kingsley v American Central Life Ins Co,* 259 Mich 53, 55; 242 NW 836 (1932), quoting *Imperial Fire Ins Co v Coos Co,* 151 US 452, 463; 14 S Ct 379; 38 L Ed 231 (1894). As most recently explained by this Court in *Raska v Farm Bureau Ins Co,* 412 Mich 355, 361-362; 314 NW2d 440 (1982):

> Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy.
>
> *    *    *
>
> The only pertinent question, therefore, is whether the exclusionary clause in this contract is ambiguous, for if it is not ambiguous we are constrained to enforce it.
>
> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
>
> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is

---

[4] See *Mays v Ins Co of North America,* 407 Mich 165, 172; 284 NW2d 256 (1979); *Francis v Scheper,* 326 Mich 441; 40 NW2d 214 (1949); *Hooper v State Mutual Life Assurance Co of Worcester, Mass,* 318 Mich 384; 28 NW2d 331 (1947); *Allor v Dubay,* 317 Mich 281; 26 NW2d 772 (1947).

no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

> *Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.* [Emphasis added. See also *Fresard v Michigan Millers Mutual Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982), reh den 417 Mich 1103 (1983).]

In the instant case, we have no difficulty in concluding that the term "land motor vehicle," taken and understood in its plain, ordinary, and popular sense, would include a moped. A "land motor vehicle," simplistically described, is a vehicle with a motor that travels on land. The term "motor vehicle" is broadly defined in the Motor Vehicle Code:

> "Motor vehicle" means every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from over-head trolley wires, but not operated upon rails. [MCL 257.33; MSA 9.1833.]

The characteristics of a "moped" are described in section 32b of the Motor Vehicle Code:

> "Moped" means a 2- or 3-wheeled vehicle which is equipped with a motor that does not exceed 50 cubic centimeters piston displacement, produces 2.0 brake horsepower or less, and cannot propel the vehicle at a speed greater than 30 miles per hour on a level surface. The power drive system shall not require the operator to shift gears. [MCL 257.32b; MSA 9.1832(2).]

A moped is a motorized two- or three-wheeled vehicle of specific motor size, speed limit, and braking horsepower; therefore, it falls within the

Motor Vehicle Code definition of a "motor vehicle," which encompasses "every vehicle which is self-propelled."[5]

Consistent with their characterization as "motor vehicles," mopeds are regulated in numerous sections of the Motor Vehicle Code. See, e.g., MCL 257.216(*l*); MSA 9.1916(*l*), MCL 257.312a(2); MSA 9.2012(1)(2), MCL 257.657; MSA 9.2357, MCL 257.661; MSA 9.2361, MCL 257.705(1)(a); MSA 9.2405(1)(a), MCL 257.679a; MSA 9.2379(1), MCL 257.710d(3); MSA 9.2410(4)(3), MCL 257.801e; MSA 9.2501(5), and MCL 257.801f; MSA 9.2501(6).

A moped is a vehicle designed for use on land, incapable of being operated on water or in the air. It is powered by a motor. Common sense and logic dictate one conclusion—that a moped is a "land motor vehicle."

Defendants assert that a moped is not a motor vehicle within the policy exclusion because the no-fault act specifically excepts motorcycles and mopeds from the coverage of that act.[6] In *Underhill v Safeco Ins Co,* 407 Mich 175, 188; 284 NW2d 463 (1979), this Court explained that motorcycles were excluded from the no-fault security requirements because of specific cost and risk factors which would have made no-fault insurance for such vehicles prohibitively expensive:

---

[5] Prior to amendment in 1983 (1983 PA 91), the Motor Vehicle Code definition of "moped" required "operable pedals." This characteristic was deleted from the definition of "moped" before the accident in question; thus, it cannot be seriously argued that a moped is a vehicle that operates other than under motorized power.

[6] In the no-fault act, "motor vehicle" is defined as follows:

"Motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in section 32b of Act No. 300 of the Public Acts of 1949 . . . . [MCL 500.3101(2)(e); MSA 24.13101(2)(e).]

Although generically motor vehicles, motorcycles are sufficiently distinct from automobiles to be constitutionally singled out for distinct treatment. In *Shavers* [*v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978)] this Court said:

"The actuarial data in the record tends to show that motorcycles are rarely at fault in motor vehicle accidents. Also, there was extensive testimony to the effect that in accidents involving motorcycles the drivers and passengers of motorcycles are killed or severely injured at a rate twice exceeding that of those involved in automobile accidents. Thus the inclusion of motorcycles in a no-fault system would result in insurance premiums so high as to preclude most motorcyclists from purchasing insurance. We believe these are, for purposes of satisfying equal protection, legitimate governmental interests. The exclusion of motorcycles from coverage under the No-Fault Act is, quite evidently, reasonably related to these legitimate interests." *Shavers v Attorney General, supra,* pp 633-634.

The discussion in *Underhill* applies with equal force to mopeds. This legislative decision in no way suggests that motorcycles and mopeds are not "motor vehicles" in common usage, and in fact supports just the opposite conclusion. See *Auto-Owners Ins Co v Ellegood,* 149 Mich App 673, 677; 386 NW2d 640 (1986) ("the very fact that the Legislature saw a need to specifically exclude motorcycles from the definition of motor vehicle under the no-fault act implies that the Legislature recognized that, in its popular and ordinary sense, 'motor vehicle' does encompass motorcycles").

The motor vehicle exclusion in plaintiff's policy does not, in our view, permit two equally reasonable yet contradictory interpretations. When ruling on a summary disposition motion under MCR 2.116(C)(10), we must determine whether the kind of record which might be developed, giving the

benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973). We find that the moped, as a "land motor vehicle," is unambiguously excluded from the scope of liability coverage.

In so holding, we do not lose sight of the overall purpose of the insurance policy in question. Generally speaking, a homeowner's policy is designed to protect against losses arising out of the ownership or use of a particular residential building and its appurtenant structures, not liability connected to the operation of motor vehicles on public highways. Motor vehicle exclusions, such as the one in the instant case, are commonly included in homeowner's policies. The basis for the motor vehicle exclusion is evident: using a motor vehicle designed for travel on public roads greatly increases the risk of bodily injury and property damage, and such liability is not within the risk which homeowner's contracts are designed to cover or for which premiums are charged. The risk of liability from the use of a motor vehicle is traditionally and properly covered by motor vehicle policies, not by homeowner's insurance. We conclude that the plaintiff's policy unambiguously excludes such a motor vehicle, the moped, from its coverage.

III

Defendants argue that the moped is covered because it is a "recreational motor vehicle." However, § II(i) of the policy specifically excludes coverage of "any Recreational Motor Vehicle subject to the Motor Vehicle Registration Act . . . ." Moreover, § II(f) provides a definition of "recreational motor vehicle" which limits its meaning to

a golf cart or snowmobile or . . . if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.

Since a moped is not a golf cart or snowmobile, obviously it can qualify for coverage under this definition only if (1) it were not subject to registration, *and* if (2) it were a vehicle designed for recreational use off public roads. The policy excludes coverage unless both requirements are met.

Defendants point to MCL 257.216; MSA 9.1916, which subjects to registration "[e]very motor vehicle . . . when driven or moved upon a highway,"[7] and argue that since it is possible for a moped never to be taken upon the highway, the phrase "not subject to motor vehicle registration" in the policy is ambiguous. Whatever the merit of such an argument under other circumstances, the hypothesis does not fit the facts presented here. Defendants cannot reasonably contend that the moped in this case was not "subject to motor vehicle registration" when in fact it was registered under the Motor Vehicle Code at the time of the accident. We believe the trial court was justified in stating that "Michigan law requires a moped to be registered if the operator plans to drive it on public roads, a circumstance in this case."

In any event, a review of the extensive and pervasive regulation directed at the operation of mopeds on the public roads convinces us that the Legislature regards the moped as a vehicle de-

[7] MCL 257.216; MSA 9.1916 provides:

Every motor vehicle, pickup camper, trailer coach, trailer, semitrailer, and pole trailer, when driven or moved upon a highway, shall be subject to the registration and certificate of title provisions of this act . . . .

signed for such use even though at times it may also be operated off the public roads.[8] We agree with the Court of Appeals in *Fire Ins Exchange v Fox, supra,* p 713, which concluded that "there is no question that a moped is designed for travel on public roads since such use is expressly recognized and regulated in the Michigan Vehicle Code."

## IV

Accordingly, the decision of the Court of Appeals is reversed and the judgment of the circuit court, granting plaintiff's motion for summary disposition and denying defendants' motions, is reinstated.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with GRIFFIN, J.

MALLETT, J., took no part in the decision of this case.

[8] Motor Vehicle Code regulations applicable to mopeds include: MCL 257.705(2); MSA 9.2405(2) (brake requirements); MCL 257.710d(3); MSA 9.2410(4)(3) (child restraints); MCL 247.679a; MSA 9.2379(1) (prohibiting operation of mopeds on limited access highways); MCL 257.659; MSA 9.2359 (prohibiting attachment to other vehicles on the highway); MCL 257.660; MSA 9.2360 (prohibiting moped use on sidewalks and regulating use on highways); MCL 257.661a; MSA 9.2361(1) (regulating handlebar height of mopeds and motorcycles operated on highway); MCL 257.706; MSA 9.2406 (requiring all motor vehicles "including a motorcycle or moped" to be equipped with a horn); MCL 257.707; MSA 9.2407 (regulating exhaust systems of motor vehicles "including a motorcycle or moped").