The OSCAR W. LARSON COMPANY,
Plaintiff–Appellee,

v.

UNITED CAPITOL INSURANCE
COMPANY, Defendant–
Appellant.

No. 94–1036.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1995.

Decided Sept. 11, 1995.

Joseph Falcone, Southfield, MI, Lisa Stoy (argued and briefed), Bigler, Berry, Johnston, Sztykiel & Hunt, Troy, MI, for plaintiff-appellee.

Leonard A. Henk (argued and briefed), Kallas & Henk, Bloomfield Hills, MI, for defendant-appellant.

Before WELLFORD, BOGGS, and SILER, Circuit Judges.

BOGGS, Circuit Judge.

Defendant-appellant, United Capitol Insurance Company (United Capitol), appeals a grant of summary judgment in this declaratory judgment action in favor of the plaintiff-appellee, Oscar W. Larson Company (Larson). The parties disagree as to the scope of coverage that Larson has for pollution-related claims under a "Commercial General Liability" policy. For the reasons set out below, we affirm.

**I**

This lawsuit centers on the interpretation of an insurance exclusion provision called the "Pollution Exclusion" by the parties. Larson installs petroleum distribution systems, including dispensers, piping and other incidental equipment. United Capitol issued Larson a Commercial General Liability policy. The policy contains a "Pollution Exclusion," detailing circumstances where Larson would not be insured for pollution related damages. The policy excludes coverage for:

(f)(1) "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

. . . . .

(d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants. . . .

Meijer, Inc., owns and operates retail gas stations in Michigan. In 1988, it decided to do construction and renovation work on eleven of them. As part of the renovations, Meijer decided to install "Pipe Jacket Total Containment and Lead Detection Systems" on its underground tanks. Meijer's aim was to create an environmentally secure gasoline delivery system.[1]

A "Total Containment System" is a secondary pipe surrounding the primary pipe, which leads from the underground storage tanks to the dispensers used by customers. It transfers any leaking fuel from the primary pipe to a pump chamber where it activates an alarm to alert the station operator of a leak. Meijer also expected the system to provide durable corrosion protection for the primary pipe, because it entirely surrounded and insulated it from the environment.

Meijer contracted to purchase several containment systems from Total Containment Company, the manufacturer, and Clawson Tank Company, the distributor. Meijer also contracted with several contractors to install the containment system at the retail gas stations. Three of these contractors subcontracted the installation of the equipment to Larson. Larson did some work itself and further subcontracted some of it to others. Larson completed the installations between July 1989 and November 1990.

Larson limited its work to installation of the system. Larson is not in the environmental clean-up business per se, and did not engage in any work to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize any *existing* pollution discharge or problem while working at Meijer. United Capitol begs the question of whether the primary system was leaking or whether gasoline had already contaminated the ground when Larson installed the secondary system. Instead, it relies on the name of the equipment, or points to the pleadings in the underlying action. *See, e.g., Appellant's Reply Brief,* at 2 & 3. But neither the name of the item, nor the pleadings, provide an answer to the question of whether the primary pipe was leaking, or whether gasoline had already contaminated the soil, when Larson installed the system. Such evasions are simply insufficient in the face of Larson's repeated denial in the district court, in its briefs to this court, and at oral argument, that there was no pre-existing pollution problem when it installed the system. Therefore, we must assume that the primary pipes were not leaking at the time Larson installed the secondary system.

1. The problems posed by underground storage of petroleum products at retail service stations are well documented. *See generally* Allison Rittenhouse Hayward, *Common Law Remedies and the UST Regulations,* 21 B.C.Envtl.Aff.L.Rev. 619 (1994).

In June 1991, in Kent County (Michigan) Circuit Court, Meijer sued Total Containment, Inc., Clawson Tank Company, and the contractors that hired Larson. Meijer claimed breach of contract and negligence in the design, manufacture, and sale of the system. Meijer alleged that, although the system passed initial air pressure tests, water eventually began leaking into the system from the outside. The water leaks, according to Meijer, "impaire[ed] or prevent[ed] the proper functioning of the leak detection system, and demonstrat[ed] a lack of integrity as a containment system." At the time of its complaint, Meijer said nothing about gas leaks. However, Meijer eventually amended the complaint and alleged releases of gasoline into the soil and groundwater.

The general contractors who hired Larson filed third party complaints against Larson alleging negligence and breach of warranty in Larson's installation of the system. On November 21, 1991, Larson's attorney requested that United Capitol defend Larson in the suit. On January 21, 1992, United Capitol sent a letter to Larson denying coverage, based on the pollution exclusion clause.

Larson brought a declaratory judgment action in Kent (Michigan) County Circuit Court. Larson sought a declaration that United Capitol had a duty to defend it in the underlying action brought against Larson in Michigan state court. United Capitol removed the declaratory judgment suit to the United States District Court for the Western District of Michigan because of a diversity of citizenship.

Both parties filed Cross–Motions for Summary Judgment. On February 8, 1993, the district court issued an Opinion and Order denying United Capitol's motion and granting in part Larson's motion. The district court entered a money judgment in favor of Larson after a bench trial on December 17, 1993. The judgment was for costs and attorney's fees incurred by Larson in maintaining its own defense in the underlying action.

United Capitol appeals the court's Opinion and Order granting Larson's motion for summary judgment, and from the judgment entered December 17, 1993, as amended December 28, 1993.

## II

■ We review appeals from a grant of summary judgment de novo. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Therefore, the test applied by the appeals and trial courts is the same. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993). The court must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Where, as here, the issue is solely one of law, summary judgment for one party will usually be appropriate.

■ Both parties agree that Michigan law governs this diversity action. The Michigan Supreme Court has held that exclusion clauses in insurance policies are to be strictly construed against the insurer and that ambiguous contract provisions must be construed against the insurer and in favor of the insured. *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 468 N.W.2d 498, 501 (1991). Furthermore, the duty to defend is broader than the duty to indemnify. *Stockdale v. Jamison*, 416 Mich. 217, 330 N.W.2d 389 (1982). The insurer must defend a lawsuit even if there are theories of liability that the policy does not cover, if there are any theories of recovery that fall within the policy's scope. *Dochod v. Central Mutual Ins. Co.*, 81 Mich.App. 63, 264 N.W.2d 122 (1978). United Capitol claims that the pollution exclusion completely eliminates any coverage and therefore relieves it of its duty to indemnify or defend Larson.

United Capitol's first ground for appeal is a claim that Paragraph (f)(2) denies coverage. Paragraph (f)(2) denies coverage for "any loss, cost or expense arising out of *any governmental direction or request* that you test for, monitor, clean up, remove, contain treat [sic], detoxify or neutralize pollutants" (emphasis added). United Capitol argues that, while a "direction" must come from the government, a "request" can come from anyone. It then claims that the underlying suit

was functionally a request by Meijer that Larson pay for its costs in containing pollution. Larson argues, and the district court held, that the word "governmental" modifies both "direction" and "request."

■■■ United Capitol does not cite any cases supporting its proposition. Such a reading runs counter to what we consider to be the common-sense reading of the clause. In a sequence separated by commas, a modifier runs to the end of the phrase, or until the next comma. Thus "governmental" should modify both "direction" and "request." Additionally, to the extent that the clause is vague, it must be strictly construed against the insurer under Michigan Law. *Farm Bureau Mutual Ins., Co.*, 468 N.W.2d at 501. Therefore, the district court's conclusion that the word "governmental" modifies both "direction" and "request" is not erroneous.

■ United Capitol's second argument is that Paragraph (f)(1)(d)(i) of the pollution exclusion prevents coverage. United Capitol urges us to conclude that because Paragraph (f)(1)(d)(i) of the exclusion clause uses the term "contain ... pollutants" in stating the kind of operation that is not insured when they result in a discharge of pollution, and because the title of the system is a "Pipe Jacket Secondary *Contain*ment System," the clause precludes coverage. United Capitol mentions the phrases no less than eleven times in it brief. This does not just elevate, it exalts, form over substance.[2]

United Capitol cites cases for the proposition that this is an absolute pollution exclusion. This reliance is misplaced. The mantra-like repetition of the phrase "absolute pollution exclusion" is of little value when the cases cited do not deal with the same clause. The pollution exclusion clauses in each of the insurance contracts in the cases United Capitol cites contain crucial differences and are facially distinguishable. *See, e.g., Manufacturer's Gasket Co. v. Transcontinental Insurance Co.*, 9 F.3d 1548 (table), 1993 WL 468905 (6th Cir. Nov.12, 1993) (no report of what the clause at issue says); *Budofsky v.*

*Hartford Insurance Co.*, 147 Misc.2d 691, 556 N.Y.S.2d 438 (N.Y.Sup.Ct.1990) (state trial court decision addresses an exclusion dealing with pollution released on land belonging to the insured); *Guilford Industries Inc. v. Liberty Mutual Insurance Co.*, 688 F.Supp. 792 (D.Me.1988), *aff'd without opinion*, 879 F.2d 853 (1st Cir.1989) (addressing interpretation of a clause that excluded coverage for pollution emanating from land belonging to the insured). At the end of its citation and discussion of cases, United Capitol is admirably forthright in conceding that it "has not been able to find any cases which discuss the word 'contain' as found in its pollution exclusion which is [sic] applicable to the facts of this case...."

The district court properly distinguished the only marginally relevant Michigan case cited by United Capitol. In *Protective National Insurance Co. of Omaha v. City of Woodhaven*, 438 Mich. 154, 476 N.W.2d 374 (1991), the Michigan Supreme Court addressed a broader exclusion as it applied to the company doing the polluting. In *Woodhaven*, the court considered an insurer's liability to defend a city that had sprayed pesticides as part of its pest control efforts. The exclusion applied to "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot ... into or upon land, the atmosphere or any water course or body of water." The exclusion never mentioned that a liability would not be covered only if it stemmed from "operations" to "test for, monitor ... [or] contain" pollutants. Thus the actual holdings in *Woodhaven*, that the spraying of a pesticide into the air was a dispersal or discharge of a pollutant and that the subsequent migration of that pesticide to places where it was not sprayed did not create coverage under a sudden and accidental exception to the exclusion, are irrelevant to this case.

The only case to deal with an identical version of the pollution exclusion involved here is *League of Minnesota Cities Insurance Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn.Ct.App.1989). *Minnesota*

---

**2.** Larson's business could not have come as a surprise to United Capitol, since the first page of each policy clearly states that Larson is a "Gas Station Equipment Installation Service."

*Cities* involved a lawsuit against a city for negligently operating its ice rink. The city's Zamboni had created excessive levels of nitrogen dioxide in the ice rink building, injuring patrons. Unfortunately, either a blunder, or, as Larson notes, a decision to "extend[ ] the clause to cover situations where the insured, while not actually performing operations, had a duty to perform them" diminishes the value of *Minnesota Cities.*

The flaw is found in the court's broadening of the scope of the exclusion by wrongly reading the phrase "should be" into paragraph (f)(1)(d). That is, the court considered the language at the end of paragraph (f)(1)(d) as if it read that

> [the insured] is, **or should be:**
>
> performing operations:
>
> (i) to test for, monitor, clean up,....

*Minnesota Cities,* 446 N.W.2d at 422 (emphasis added). The court does not explain the inclusion of the phrase "or should be" in the policy, when it clearly was not part of the clause as signed. *Compare Minnesota Cities,* 446 N.W.2d at 420, *with Minnesota Cities,* 446 N.W.2d at 422. There is no claim that Larson owed a duty to perform any of the listed operations. Its liability must be based on the substance of the operations Larson undertook. Finally, although it concerns an identical clause, *Minnesota Cities* does not deal with the term "contain" or the implications of the words surrounding it. Instead, *Minnesota Cities* held that the phrase "arising out of" was not ambiguous and also that the release of the pollutants was not covered where it was the accumulation of poisonous materials rather than the release that caused the injury.

The issue then is whether Larson's work could be described as being to "contain" pollution because it installed a pipe that the manufacturer elected to market as a "Total Containment System." United Capitol would have us read the word in a vacuum without regard for the context in which it appears, including the words preceding and following it. We reject the invitation, preferring to read the word in the manner in which the policy uses it, not in one of the myriad ways that a malleable language can be shaped.

Clearly, if Larson went to the Meijer stations to work on pollutants already in the soil, the exclusion would prevent coverage for damages from Larson's failure to remedy the situation, or for making it worse. However, when read in the context of the other phrases surrounding it, we conclude that the phrase "contain ... pollution" does not cover installing a pipe jacket on a non-polluting (at the time) system. As the district court noted in a similar case, each term in the clause is a verb that presupposes an attempt to remedy an *existing* pollution problem.

> The court notes that the word "contain" appears in a list of words which deal with the remedying of a pollution problem. The court's interpretation might well differ if the other words in the list were "house," "construct," "hold," or "fill" instead of "test for," "monitor," "clean up," "remove," "treat," "detoxify," and "neutralize." The court finds that the word "contain," as used in the insurance policy, does not cover the construction of a tank unless construction is being undertaken to remedy an existing pollution problem.

*Action Auto Stores, Inc. v. United Capitol Ins. Co.,* 845 F.Supp. 428, 438 (W.D.Mich. 1993). The only difference between *Action Auto* and this case is that in *Action Auto* Larson was installing the actual gas holding tank. Here they were installing a product called a "containment system." [3] The district court concluded that the word "contain" in the insurance policy does not cover the installation of a pipe jacket (despite its marketing name) unless the installer undertakes the work to remedy an existing pollution problem. This conclusion is correct and does not involve the resolution of any disputed issues of fact precluding summary judgment.

---

3. We note that United Capitol advanced the same argument in *Action Auto* that they do here, with similar results. The district court held that merely constructing a tank to hold gasoline did not amount to an operation to contain pollution as described by the policy. United Capitol now complains that the district court relied on *Action Auto* too much in this case, going so far as to claim that the district court never independently examined the facts of this case. A simple review of the court's opinion makes it clear that this argument is meritless.

United Capitol never addresses this argument, relying instead on the name of the product to provide the logic for excluding coverage. The fact that the name of the item being installed included the word "contain" does not, per se, preclude coverage, just as the choice of a product name that is not used in the exclusion clause would not, per se, create coverage. It is the substance of the operations undertaken, not the superficial title a company gives them, or its product, that matters.[4]

## III

For the foregoing reasons the judgment of the district court is **AFFIRMED.**

---

**4.** Because we conclude that the policy language provides coverage we need not decide whether gasoline is a pollutant, another requirement of policy's exclusion clause.