*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GAVRILIDES MANAGEMENT COMPANY, LLC,
GAVRILIDES PROPERTY MANAGEMENT, LLC,
and GAVRILIDES MANAGEMENT
WILLIAMSTON, LLC,

      Plaintiffs-Appellants,

v

MICHIGAN INSURANCE COMPANY,

      Defendant-Appellee.

FOR PUBLICATION
February 1, 2022
9:05 a.m.

No. 354418
Ingham Circuit Court
LC No. 20-000258-CB

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIUM.

Plaintiffs, the corporate entities that operate two restaurants in the mid-Michigan area, appeal by right the trial court's order granting summary disposition in favor of defendant, which provided plaintiffs with a commercial insurance policy. We affirm.

## I. BACKGROUND

The year 2020 saw the outbreak of a global pandemic caused by the SARS-CoV-2 coronavirus, which causes a disease known as COVID-19. The outcome of infection can range from no symptoms at all to death, and surviving an infection can cause lasting health effects. It is an understatement to say that governments worldwide, national to local, have struggled with how best to address not only the medical fallout from the pandemic, but also the social and economic ramifications. Although the virus remains not fully understood, it is generally believed to be transmissible primarily through airborne viral particles or virus-bearing droplets, but it can also be transmissible through touching contaminated surfaces and then touching the eyes, nose, or mouth. Not surprisingly, one of the more common methods implemented by governments for reducing the spread of the disease has been "social distancing." Very broadly, social distancing generally entails keeping one's distance from others; avoiding large groups, especially in enclosed spaces; and staying home to the extent possible.

Governor Whitmer issued a number of Executive Orders (EOs) in an effort to address and stem the rising tide of COVID-19 in Michigan. Effective March 24, 2020, Governor Whitmer signed EO 2020-21, which, in relevant part, prohibited nonessential in-person work, generally ordered persons to stay home, and required persons to stay at least six feet away from each other ("social distancing"). Subsequently, EO 2020-42, in relevant part, extended EO 2020-21. As a consequence of those EOs, plaintiffs' restaurants—like many other businesses in Michigan and elsewhere—experienced substantial loss of income. As of the date of plaintiffs' complaint, one of its restaurants remained in operation but limited to carry-out services, and one restaurant had closed entirely.

Defendant issued a commercial insurance policy to plaintiffs. The policy contains a "Business Income (and Extra Expense) Coverage Form," which provides, in relevant part:

> We will pay for the actual loss of Business income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

The form provides, in relevant part, the following definitions:

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2)     The date when business is resumed at a new permanent location.

* * *

6.     "Suspension" means:

a.     The slowdown or cessation of your business activities; or

b.     That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

The parties agree that a "special form" governs causes of loss as follows:

A.  Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1.     Excluded in Section B., Exclusions; or

2.     Limited in Section C., Limitations;

that follow.

B.  Exclusions

1.  We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a.  Ordinance Or Law

The enforcement of any ordinance or law:

(1)     Regulating the construction, use or repair of any property; or

(2)     Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

(a)     An ordinance or law that is enforced even if the property has not been damaged; or

(b)     The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or

-3-

demolition of property, or removal of its debris, following a physical loss to that property.

* * *

c. Governmental Action.

Seizure or destruction of property by order of governmental authority.

* * *

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

* * *

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

Finally, the policy includes an "Exclusion of Loss Due to Virus or Bacteria" endorsement, which provides, in relevant part:

A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Plaintiffs submitted a claim for business interruption losses to defendant. Defendant denied the claim. Defendant explained that the Exclusion of Loss Due to Virus or Bacteria endorsement precluded plaintiffs' claim: plaintiffs had not demonstrated "direct physical loss of or damage to property," and "other exclusions or limitations on coverage may also apply." Plaintiffs commenced this action, whereupon defendant moved for summary disposition. The trial court agreed with defendant, and this appeal followed.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), and the trial court granted summary disposition pursuant to MCR 2.116(C)(8). "Where summary disposition is granted under the wrong rule, Michigan appellate

-4-

courts, according to longstanding practice, will review the order under the correct rule." *Spiek v Michigan Dep't of Transportation*, 456 Mich 331, 338 n 9; 572 NW2d 201 (1998).

When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the non-moving party. *Id*. at 119. Only the pleadings may be considered when deciding a motion under MCR 2.116(C)(8). *Id*. at 119-120. Because plaintiffs attached a copy of the insurance policy to their complaint, the policy is part of the pleadings. *Veritas Auto Machinery LLC v FCA Int'l Operations LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 346985), slip op at p 3.

This Court reviews de novo the interpretation and application of an insurance policy. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001). This Court reviews for an abuse of discretion a lower court's decision regarding an amendment of a complaint. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). An abuse of discretion occurs when a trial court makes a decision that falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

## III. CONTRACT INTERPRETATION PRINCIPLES

As an initial matter, we have been presented with several thoughtful, well-written, and thorough briefs from various amicus, but much of what amici present are policy arguments outside the scope of this Court's remit. For example, whether our decision will have apocalyptic ramifications to the insurance industry or to the restaurant industry is certainly of concern, but no facts supporting such dire predictions are developed in the record and, more importantly, are concerns more appropriately directed to the Legislature or Congress. One amicus argues that many insurers use "standard-form" policies, the contents of which are only negotiated between "the insurance industry" and certain regulatory bodies, following which "policyholders are offered the approved forms on a take-it-or-leave-it basis." Amicus argues that the insurance industry nationwide misrepresented the nature of the virus exclusion when obtaining approval for that form from the relevant regulatory bodies and therefore should be estopped from denying coverage based on the exclusion. We decline to consider this argument because it was not made by plaintiffs, and the record does not contain any evidence showing that any such alleged misrepresentation occurred in Michigan.[1]

---

[1] Although we do not necessarily foreclose such an argument as a matter of law, we note that a lack of bargaining power by a policyholder justifies construing language in an insurance policy strictly against the insurer but not, standing alone, rewriting an unambiguous policy. *American Bumper and Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 448; 550 NW2d 475 (1996). If the kind of misrepresentation alleged by amicus did occur in Michigan, we suggest that plaintiffs seek

We emphasize that we do not believe the concerns raised by amicus are unwarranted or unimportant. Furthermore, there are occasions where public policy concerns can and should compel courts to rescind contracts. See *Badon v General Motors Corp*, 188 Mich App 430, 438-439; 470 NW2d 436 (1991). However, a "public policy" clear enough to force the rescission of an otherwise valid contract must come from objective sources, not from individual judges' subjective views. *Terrien v Zwit*, 467 Mich 56, 66-69; 648 NW2d 602 (2002). Ideally, the best source of public policy is the Legislature. *Woodman v Kera LLC*, 486 Mich 228, 245-246; 785 NW2d 1 (2010). "By deferring to the Legislature in matters involving complex social and policy ramifications far beyond the facts of the particular case, we are not telling the parties that the issues they raise are unworthy of legal recognition." *Van v Zahorik*, 227 Mich App 90, 98; 575 NW2d 566 (1997) (quotation omitted). "To the contrary, we intend only to illustrate the limitations of the courts in fashioning a comprehensive solution to such a complex and socially significant issue." *Id*. at 98-99. In the absence of " 'definite indications in the law' of some contrary public policy," contracts generally must be enforced as written. *Bronner v City of Detroit*, ___ Mich ___, ___; ___ NW2d ___ (2021) (Docket No. 160242), slip op at p 5 (quotation omitted).

"An insurance policy is enforced in accordance with its terms. Where a term is not defined in the policy, it is accorded its commonly understood meaning." *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 534; 676 NW2d 616 (2004). This Court may consult dictionary definitions. See *id*. at 534-535. "An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties." *Hunt v Drielick*, 496 Mich 366, 372; 852 NW2d 562 (2014) (quotation marks and citation omitted). "[A]n insurance policy must be read as a whole to determine and effectuate the parties' intent." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009). "An insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Royal Prop Group LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005).

This Court may not rewrite clear and unambiguous language in an insurance policy. *Group Ins Co of Mich v Czopek (After Remand)*, 440 Mich 590, 596-597; 489 NW2d 444 (1992). However, exclusionary clauses are strictly construed against the insurer, *Hunt*, 496 Mich at 373, and "any ambiguities are strictly construed against the insurer to maximize coverage." *American Bumper and Mfg Co*, 452 Mich at 448. However, the courts may not create an ambiguity where none exists, and unambiguous language must be applied as written. *Id*.; *Farm Bureau Mut Ins Co of Mich v Stark*, 437 Mich 175, 181-182; 468 NW2d 498 (1991), overruled on other grounds by *Smith v Globe Live Ins Co*, 460 Mich 446; 597 NW2d 28 (1999); *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470-477; 663 NW2d 447 (2003).

---

action by the Insurance Commission, because absent action by our Supreme Court, our decision to affirm concludes this litigation.

IV.  "DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY"

Plaintiffs argue that they suffered "direct physical loss of or damage to property" within the meaning of defendant's policy.  We disagree.

The word "or" typically indicates a disjunction or separation.  *Public Service Comm v City of Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949).  As used here, the policy clearly requires "direct physical loss of property" or "direct physical damage to property."  For purposes of resolving this appeal, we accept, without deciding, plaintiffs' contention that any such loss or damage need not be permanent.  Nevertheless, the word "physical" necessarily requires the loss or damage to have some manner of tangible and measurable presence or effect in, on, or to the premises.[2]  Plaintiffs also argue that any such loss or damage can include contamination to the environment within a building, such as the air, even in the absence of any detectable alteration to the structure or other property.  We find this latter argument questionable because it seemingly describes an *indirect* physical loss or damage, which would be precluded by the word "direct" in the policy.  We need not decide the substantive merits of this argument, however, because in any event, plaintiffs' complaint does not assert the requisite material existence.

In particular, the allegations in the complaint indicate that plaintiffs' restaurants were *not* contaminated with the SARS-CoV-2 virus.  The complaint asserts that nothing happened to the premises beyond partial or complete closure due to two Executive Orders that had statewide applicability.  Furthermore, EO 2020-21 and 2020-42 unambiguously indicate that their primary purpose is to curtail person-to-person transmission of the virus.  The orders mandated social distancing to the extent possible even at businesses that remained open.  The orders also mandated "[i]ncreasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19, as well as protocols to clean and disinfect in the event of a positive COVID-19 case in the workplace."  EO 2020-21, § 5(c)(5); EO 2020-42, § 10(e).  We do not think mandating a more rigorous cleaning regimen constitutes damage or loss, and the complaint explicitly alleges that there were no positive COVID-19 cases at plaintiffs' establishments.  Importantly, the Executive Orders applied to all businesses without regard to whether a single viral particle could be found within.  Plaintiffs' restaurants were unambiguously closed by impersonal operation of a general law, not because anything about or inside the particular premises at issue had physically changed.[3]

---

[2] The word "physical" "means of or pertaining to that which is material."  *People v Yamat*, 475 Mich 49, 54 n 15; 714 NW2d 335 (2006) (quotation omitted).  "Material means relating to, derived from, or consisting of matter and being of a physical or worldly nature."  *Total Armored Car Service, Inc v Dep't of Treasury*, 325 Mich App 403, 409; 926 NW2d 276 (2018) (quotation and alteration omitted).

[3] Plaintiffs seek to amend their complaint to allege, in relevant part, that the virus was physically present within its restaurants, so there was a material change in the premises.  As we will discuss, however, any such amendment would be futile because it would implicate the exclusion for damage or loss caused by a virus.

In addition to failing to establish "direct physical loss of or damage to property," plaintiffs' claim would appear to be precluded by Section B(1)(a)(1) of the "special form," which states, in relevant part, "[w]e will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, *use* or repair of any property" (emphasis added). "[A]s a general proposition, it cannot be denied that executive orders may be given the force of law if authorized by a statute that constitutionally delegates power to the executive or, indeed, as a function of any other constitutional authority, including that inherent within the executive power." *In re Certified Questions from United States District Court, Western District of Michigan, Southern Division*, 506 Mich 332, 343 n 6; 958 NW2d 1 (2020).[4] Presuming the Executive Orders relevant to this matter constituted "any enforcement or law" within the meaning of Section B(1)(a)(1), plaintiffs effectively claim to have suffered losses as a consequence of the closure of their restaurants due to the enforcement of a law. In addition to such loss or damage lacking any tangible presence in or on the premises, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

We also observe that the business income loss provision applies "during the 'period of restoration.'" The "period of restoration" ends, by definition, either "when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location." As noted, contracts must be read as a whole, and we must strive to avoid rendering any part of a contract nugatory. *Hastings Mut Ins Co*, 286 Mich App at 292; *Royal Prop Group LLC*, 267 Mich App at 715. The Executive Orders applied statewide and without regard to actual contamination of premises. Consequently, moving to a new location would not have permitted plaintiffs' restaurants to reopen. Likewise, no repair, reconstruction, or replacement of the premises would have permitted plaintiffs' restaurants to reopen. The clear and unambiguous import of the definition of "period of restoration" is that the contract expects the loss or damage to be amenable to some kind of physical remediation—either by making tangible alterations or repairs to the premises, or by replacing the premises altogether. No alteration to, or replacement of, plaintiffs' premises would have permitted the restaurants to reopen.

The policy also contains a civil authority provision, under which:

When a Covered Cause of Loss causes damage to property other than the property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

     (1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described

---

[4] Furthermore, Section B(3)(b) of the same "special form" precludes payment for losses or damage "resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." This provision also states that defendant will pay for such loss or damage if it "results in a Covered Cause of Loss." However, the Executive Orders themselves did not result in a covered cause of loss, i.e. physical loss or damage to the premises.

premises are within that area but are not more than one mile from the damaged property; and

(2)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

A "Covered Cause[] of Loss" includes a "Risk[] Of Direct Physical Loss." Plaintiffs contend that coverage was available under this provision. We disagree.

Plaintiffs correctly point out that the above provision does not require any damage to, or indeed any physical effect upon, plaintiffs' premises. See *Sloan v Phoenix of Hartford Ins Co*, 46 Mich App 46, 50; 207 NW2d 434 (1973). However, the provision unambiguously requires damage to nearby property, and none is alleged. To the extent access to any neighboring properties was prohibited, that prohibition was a result of a health crisis and the specter of person-to-person transmission of a dangerous virus, irrespective of whether those properties were altered. Furthermore, the provision clearly expects a defined area to be cordoned off. The Executive Orders did not do so: any person who was excepted from the stay-at-home provision of the Executive Orders could, at least in principle, have driven or walked past plaintiffs' restaurants. Finally, this provision anticipates a response by a civil authority to some discrete damage or threat of damage. We find persuasive[5] the observation in *Newchops Restaurant Comcast LLC v Admiral Indemnity Co*, 507 F Supp 3d 616, 625 (ED Penn, 2020) that "[t]he civil authority action cannot be both the cause of [the] damage and the response to it." Again, the gravamen of the complaint is that plaintiffs' losses occurred due to the closure of their restaurants by the Executive Orders.

We conclude that defendant properly denied coverage to plaintiffs because the Executive Orders did not result in "direct physical loss of or damage to property." Plaintiffs have also failed to establish that an "action of civil authority [prohibited] access to the described premises" within the meaning of the policy. Finally, plaintiffs' claim would appear to be precluded in any event because their losses were "caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property[.]"

## V.  VIRUS EXCLUSION

Defendant also denied coverage pursuant to the virus exclusion in the policy.[6] Plaintiffs argue that we should find the virus exclusion void for vagueness or void as against public policy.

---

[5] Although we are not bound by decisions of lower federal courts, we may find them persuasive. See *Abela v General Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

[6] We note that an exclusion is only relevant if the loss is covered, and the loss in this matter was not covered. The exclusion would therefore not be applicable to plaintiffs' claims as presented. As noted in footnote 3, however, plaintiffs propose to amend their complaint to allege that the presence of the virus inside their restaurants caused a material change in the premises. It is therefore necessary for us to address this alternative basis for denying coverage.

-9-

We reject plaintiffs' public policy argument for the same reason we rejected amicus's public policy argument above, and we do not find that the virus exclusion is vague.

Plaintiffs argue that the virus exclusion does not apply to the business income form, because the virus exclusion uses the phrase "loss or damage" without qualification and, therefore, is ambiguous. As set forth above, however, the virus exclusion expressly and plainly states that it "applies to all coverage under all forms and endorsements . . . including but not limited to forms or endorsements that cover . . . business income, extra expense or action of civil authority." Plaintiffs argue that "loss or damage" means only physical damage, which is disproved by the fact that at other places in the policy, the qualifier "physical" is prepended to the phrase "loss or damage." The only reasonable interpretation is that, as used in the virus exclusion, "loss or damage" is not restricted to physical losses or damages.

Plaintiffs also argue that the absence of phrases like "regardless of any other cause" or "directly or indirectly" suggests that the exclusion should apply narrowly. It does apply narrowly: it applies to losses or damage "caused by or resulting from" a subset of microorganisms capable of causing physical distress, illness, or disease. As discussed above, a covered loss must have some material basis, so the virus exclusion plainly applies to any such loss that was caused by or that resulted from a virus that can cause distress, illness, or disease. There is no serious dispute that SARS-CoV-2 is a virus that induces disease. Under the circumstances of this case, if plaintiffs suffered any material loss, that loss could only have been caused by the virus, so the virus exclusion would necessarily apply. Therefore, defendant properly denied plaintiffs' claim pursuant to the virus exclusion.

## VI. AMENDMENT OF COMPLAINT

Plaintiffs finally argue that they should have been given leave to amend their complaint. We disagree.

Plaintiffs failed to present any written offer of proof as to what such an amendment would contain. The trial court therefore did not abuse its discretion by denying leave to amend. *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999); *Twp of Grayling v Berry*, 329 Mich App 133, 151-152; 942 NW2d 63 (2019). On appeal, plaintiffs contend that "the complaint could have been amended to add allegations concerning the physical spread of the virus on covered or nearby property." It appears that plaintiffs seek to allege that, contrary to what was stated in their complaint, their premises *were* physically affected (or at least infiltrated) by the SARS-CoV-2 virus. However, as just noted, if such an amendment were permitted, the virus exclusion would clearly apply. Indeed, the applicability of the virus exclusion would be even more unambiguous, because plaintiffs' losses would therefore directly "result from" the virus without even the single intermediate link of the Executive Orders. Amendment would therefore be futile. See *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8-9; 772 NW2d 827 (2009). We also deny

-10-

plaintiffs' request for remand to more fully explore the virus exclusion, because the interpretation of a contract is a question of law that we review de novo. *Cohen*, 463 Mich at 528.

Affirmed. Because this matter presents an issue of significant public importance, we direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause