## AMORELLO v MONSANTO CORPORATION

Docket No. 112838. Submitted May 10, 1990, at Detroit. Decided November 20, 1990, at 9:04 A.M. Leave to appeal sought.

In the fall of 1980, Detroit Edison Company replaced a leaking electrical transformer in Doris and Leonard Amorello's backyard. In 1983, Leonard Amorello noticed that several trees in the backyard were dying and suspected that the replacement transformer was leaking. An investigation by a Detroit Edison employee found no evidence that the transformer was leaking. Later that year, Doris Amorello's health began to deteriorate, and in the latter part of 1984 Leonard Amorello's health also began to deteriorate. After consulting several physicians, the Amorellos brought an action against Monsanto Corporation, the manufacturer of the transformers, and the Detroit Edison Company in the Wayne Circuit Court, alleging that their medical problems resulted from exposure to polychlorinated biphenyls (PCBS) which leaked from the transformers in their backyard. The defendants moved for summary disposition, arguing that the plaintiffs had not been exposed to PCBS from the leaking transformer and that, even if they had, they could not establish a causal relationship between the exposure and their health problems. The court, John H. Hausner, J., granted the defendants' motion. The plaintiffs appealed.

The Court of Appeals *held:*

1. The plaintiffs failed to present any affidavits or documentary evidence showing that the PCBS detected in soil samples taken from their backyard came from the transformer that leaked or that their health problems were caused by the alleged exposure to PCBS from the transformers. The mere fact that the plaintiffs acted in propria persona at the hearing on the motion does not entitle them to consideration by the Court of Appeals of documents which were not presented in the trial

REFERENCES

Am Jur 2d, Appeal and Error §§ 2, 545; Summary Judgment §§ 26, 27, 32, 33, 36.

See the Index to Annotations under Appeal and Error; Expert and Opinion Evidence; Pro Se; Summary Judgment.

court. The trial court properly granted summary disposition in favor of the defendants.

2. The plaintiffs' argument that the testimony of their expert witnesses established that their health problems were caused by PCB exposure must be rejected. The plaintiffs failed to offer evidence to rebut the defendants' claim that the testimony of the plaintiffs' experts did not have a reasonable medical or reliable scientific basis and was not supported by scientific and medical literature and that, thus, the opinion testimony of the expert witnesses was admissible.

Affirmed.

1. APPEAL — CONTENT OF RECORD — PARTIES ACTING IN PRO PER.

Review by the Court of Appeals generally is limited to the record presented in the trial court or administrative tribunal; the mere fact that a party acted in propria persona in the trial court or administrative tribunal does not entitle the party to enlargement of the record on appeal (MCR 7.210[A]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — EXPERT WITNESSES.

Summary disposition is not precluded simply because a party has produced an expert witness to support its position; the expert's opinion must be admissible, i.e., the court must determine whether the opinion will assist the trier of fact to understand the evidence or to determine a fact in issue, whether the opinion will tend to mislead or confuse the jury, and whether the facts and data upon which the expert relies in formulating an opinion are reliable (MRE 403 and 702).

*Thomas A. Stotz,* for the plaintiffs.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John E. S. Scott*), for Monsanto Corporation.

*Barbier & Tolleson, P.C.* (by *Christopher G. Manolis*), for Detroit Edison Company.

Before: MACKENZIE, P.J., and SAWYER and DOCTOROFF, JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting defendants' motions for sum-

mary disposition. Plaintiffs allege that they suffered a variety of medical problems as a result of exposure to polychlorinated biphenyls (PCBS) which allegedly leaked from a Detroit Edison electrical transformer located in their backyard. Defendant Monsanto was the manufacturer of the electrical transformer. Plaintiffs argue that the trial court erred in granting summary disposition because sufficient evidence existed to raise a question of material fact regarding whether plaintiffs suffered adverse health effects from PCBS leaking from a Detroit Edison transformer on plaintiffs' property. We disagree and affirm.

We first note that some of the facts presented in this opinion are taken from the briefs filed on appeal and from discovery materials which were not part of the lower court record nor presented to the trial court prior to its ruling on the motion for summary disposition. They are included in this opinion where necessary for presentation of the facts.

In late September or early October 1980, a Detroit Edison employee was called to plaintiffs' home to investigate a complaint of low voltage. The investigation revealed that the electrical transformer in plaintiffs' yard was leaking. There was an oil residue on the ground and on the pole, and there were oil stains on the side of the transformer. The employee wrote an order that the transformer be changed, and it was replaced soon thereafter.

In April 1983, plaintiff Leonard Amorello noticed that several trees at the back of the yard were dying. Mr. Amorello noticed that the bottom of the transformer was covered with oil and dust, that the pole was black, and that there was a "big, black puddle" at the base of the pole. Detroit Edison employee Ed Ferasin investigated plaintiffs'

complaint and found no evidence that the transformer was leaking. According to plaintiffs, employees of Detroit Edison told them that the transformer contained PCBS. Ferasin took four soil samples. PCBS were not detected in the two samples taken farthest from the pole. PCBS were detected in the other two samples in amounts of 1.5 and 3.0 parts per million (ppm).

In the latter part of 1983, plaintiff Doris Amorello's health began to deteriorate. Mr. Amorello's health began to deteriorate in the latter part of 1984. Both plaintiffs were subsequently examined by several physicians. Dr. Irwin Feldman performed several tests on Mr. Amorello and found that his blood serum contained less than five parts per billion (ppb) of PCBS.

In late 1986, Dr. Paul Grundland performed several tests on Mrs. Amorello which revealed that she suffered from elevated triglyceride levels, an elevated lipoprotein level, and an enlarged liver. Dr. Grundland testified in deposition that these conditions may have been caused by exposure to PCBS. Mrs. Amorello's blood serum contained less than five ppb of PCBS.

Dr. Norman Zimmerman, plaintiffs' expert toxicologist, testified in deposition that the transformer leak was the source of plaintiffs' PCB contamination.

Plaintiffs' complaint was filed on February 6, 1986. On September 19, 1986, the trial court granted plaintiffs' counsel's motion to withdraw. Plaintiffs obtained another attorney, and an amended complaint was filed on March 13, 1987. Discovery closed on January 23, 1988. On June 24, 1988, plaintiffs' attorney moved to withdraw. The trial court granted the motion on July 29, 1988.

Defendant Monsanto filed a motion for summary disposition pursuant to MCR 2.116(C)(10) on Sep-

tember 2, 1988. Defendant Detroit Edison joined in the motion. The grounds for the motion were that (1) plaintiffs had not been exposed to PCBs from the leaking transformer, and (2) even if plaintiffs had been exposed to PCBs, plaintiffs could not establish a causal relationship between the exposure and their health problems. In support of the motion, defendants stated that the transformer which had been replaced in October 1980 and the existing transformer use mineral oil as a dielectric fluid and were not designed to use dielectric fluid containing PCBs. Defendants presented deposition testimony, including Mr. Amorello's testimony that he never touched the black puddle on the ground and Ferasin's testimony that there were no records of an oil spill on the site and that he was aware of instances where PCBs were detected in soil in the absence of any spill.

The affidavit of Dr. Raymond D. Harbison, an expert in the field of toxicology, and two 1987 articles by Dr. Renate Kimbrough, an expert on PCBs, were attached to defendants' motion. Dr. Harbison stated that all people have background levels of PCBs in their blood ranging from five to thirty ppb, even though they have no known source of PCB exposure. Both plaintiffs had PCB blood levels of less than five ppb. Dr. Harbison explained that no scientific study has shown that body levels of PCBs increase merely because a person has been in the presence of PCB contaminated soil. Dr. Harbison further stated that the opinions expressed by Drs. Feldman and Grundland were not supported by literature considered reliable in the scientific and medical community or by valid scientific data and methods. According to the articles by Dr. Kimbrough, there is no conclusive scientific evidence that PCB exposure causes significant chronic health effects.

Plaintiffs filed a response to the motion in propria persona. In support of the response, plaintiffs attached excerpts from two books published in 1981 which indicate that acute or excessive chronic exposure to PCBs can cause chloracne and liver damage.

The hearing on the motion was held on October 14, 1988. Plaintiffs appeared in propria persona. The trial court granted defendants' motion, ruling that plaintiffs failed to present evidence that the transformer was the source of the PCBs in the ground or that there was a causal connection between the transformer leak and plaintiffs' medical problems.

On appeal, plaintiffs argue that the trial court erred in granting summary disposition because sufficient evidence existed to raise a question of material fact regarding whether they were exposed to PCBs and that the exposure was the proximate cause of their health problems.

A motion for summary disposition may be granted pursuant to MCR 2.116(C)(10) when, except with regard to the amount of damages, there is no genuine issue of any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The party opposing the motion has the burden of showing that a genuine issue of disputed fact exists. *Ewers v Stroh Brewery Co,* 178 Mich App 371, 374; 443 NW2d 504 (1989). The opponent must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Id.*; MCR 2.116(G)(4). The existence of a disputed fact must be established by admissible evidence. *Pauley v Hall,* 124 Mich App 255, 262; 335 NW2d 197 (1983), lv den 418 Mich 870 (1983). The court must

consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. *Gruett v Total Petroleum, Inc,* 182 Mich App 301, 304; 451 NW2d 608 (1990). Giving the benefit of reasonable doubt to the opponent, the court must determine whether a record might be developed which would leave open an issue upon which reasonable minds might differ. *Id.,* p 305. The court may not make findings of fact or weigh credibility in deciding a summary disposition motion. *Paul v U S Mutual Financial Corp,* 150 Mich App 773, 779; 389 NW2d 487 (1986).

Review of plaintiffs' written response to defendants' motion and the transcript of the hearing clearly reveals that plaintiffs failed to meet their burden. Plaintiffs did not present any affidavits or documentary evidence showing that the PCBs detected in the soil came from the transformer that leaked or that their health problems were caused by the alleged exposure to PCBs from the transformers.

Plaintiffs' argument on appeal ignores the general rule that this Court's review is limited to the record presented in the trial court or administrative tribunal. MCR 7.210(A); *Traverse Oil Co v Chairman, Natural Resources Comm,* 153 Mich App 679, 691; 396 NW2d 498 (1986); *Burrill v Michigan,* 90 Mich App 408, 412; 282 NW2d 337 (1979). Enlargement of the record on appeal is generally not permitted. *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm,* 173 Mich App 647, 673; 434 NW2d 648 (1988); *Hawker v Northern Michigan Hospital, Inc,* 164 Mich App 314, 318; 416 NW2d 428 (1987). Thus, plaintiffs' references to documents which were not presented to the trial court cannot be considered by this Court.

We reject plaintiffs' apparent assertion that we

should consider the documents which were not presented to the trial court because plaintiffs acted in propria persona. *Baird v Baird,* 368 Mich 536, 539; 118 NW2d 427 (1962); *Hoven v Hoven,* 9 Mich App 168, 174; 156 NW2d 65 (1967); *Bachor v Detroit,* 49 Mich App 507, 512; 212 NW2d 302 (1973). The trial court properly granted summary disposition to defendants.

Furthermore, even if the documents presented to this Court had been properly presented to the trial court prior to its grant of the motion for summary disposition, we find that summary disposition was proper. Plaintiffs contend that circumstantial evidence could lead a reasonable juror to conclude that the transformer that leaked and was removed in 1980 was contaminated with PCBs. Defendants contend that the general and circumstantial evidence on which plaintiffs rely does not raise an issue of fact regarding whether the transformer replaced in 1980 contained PCBs or whether the transformer was the source of the PCBs detected in the two soil samples taken in 1983. We agree with defendants. The evidence presented by plaintiffs is insufficient to raise a genuine issue of material fact. Even with that evidence, speculation is required to conclude that the transformer replaced in 1980 contained PCBs or that the transformer was the source of the PCBs detected in the 1983 soil samples.

Plaintiffs also argue that testimony establishes that plaintiffs' health problems were caused by PCB exposure. Plaintiffs rely on the testimony of the examining physicians, Drs. Feldman and Grundland, and of Norman Zimmerman, a toxicologist.

Summary disposition is not precluded simply because a party has produced an expert to support its position. The expert's opinion must be admissible. MRE 403; MRE 702. For an expert's opinion to

be admissible, the court must determine whether the opinion will assist the trier of fact to understand the evidence or to determine a fact in issue, and the opinion must not tend to mislead or confuse the jury. *Id.* The facts and data upon which the expert relies in formulating an opinion must be reliable. *In re "Agent Orange" Product Liability Litigation,* 611 F Supp 1223, 1245 (ED NY, 1985), aff'd 818 F2d 187 (CA 2, 1987); *In re Paoli Railroad Yard PCB Litigation,* 706 F Supp 358, 368 (ED Pa, 1988); *Viterbo v Dow Chemical Co,* 646 F Supp 1420 (ED Tex, 1986), aff'd 826 F2d 420 (CA 5, 1987). Plaintiffs offer no evidence to rebut defendants' claim that the testimony of plaintiffs' experts did not have a reasonable medical or reliable scientific basis and is not supported by scientific and medical literature. Hence, plaintiffs did not show that the opinion testimony was admissible. Summary disposition was appropriate.

Affirmed.