NELSON v AMERICAN STERILIZER COMPANY

Docket No. 167520. Submitted May 2, 1995, at Detroit. Decided August 11, 1995, at 9:15 A.M.

Pearline Nelson brought an action in the Wayne Circuit Court against American Sterilizer Company and others, alleging that her exposure to ethylene oxide that leaked from a sterilizer caused her to suffer neurological disorders and reduced liver function. The court, William A. Giovan, J., dismissed the action before trial, ruling that the testimony of the plaintiff's experts regarding ethylene oxide as the cause of the plaintiff's liver impairment was inadmissible because the opinion of those experts was not generally recognized by the scientific community. The court, as a sanction for the plaintiff's inadequate response to the defendant's interrogatories, also barred one of the plaintiff's experts from testifying with regard to causation. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court erred in granting the motion in limine and in dismissing the action. Where, as in this case, the evidentiary challenge relates to the conclusions drawn from a given scientific study, and not the study itself, the trial court's role is not to determine whether the conclusion is generally accepted by the scientific community, but whether a rational juror could reasonably rely on the study to find causation. In other words, the trial court must determine whether the conclusion drawn from the scientific evidence is so patently unrelated to the evidence that it is, as a matter of law, inadmissible. If the expert's conclusion passes this minimal test, then the weight to be given the opinion is to be determined by the jury.

2. The trial court did not abuse its discretion in sanctioning the plaintiff for her discovery violation.

Affirmed in part, reversed in part, and remanded.

EVIDENCE — EXPERT TESTIMONY — CONCLUSIONS DRAWN FROM SCIENTIFIC EVIDENCE.

A trial court, in ruling on a challenge to the admissibility of a

REFERENCES

Am Jur 2d, Expert and Opinion Evidence § 245.
See ALR Index under Expert and Opinion Evidence; Science and Scientific Matters.

conclusion regarding the cause of a personal injury, as drawn by a scientific expert from a given scientific study, should not determine whether the conclusion is generally accepted by the scientific community, but whether a rational juror could reasonably rely on the study to find causation.

*Donald M. Fulkerson,* for the plaintiff.

*Reynolds, Beeby & Magnuson, P.C.* (by *Frank K. Mandlebaum* and *Elizabeth A. Fellows*), and *Skadden, Arps, Slate, Meagher & Flom* (by *Bert L. Wolff*), for the defendants.

Before: NEFF, P.J., and GRIBBS and R. D. GOTHAM,* JJ.

NEFF, P.J. Plaintiff, in this tort action, appeals as of right from an order of the circuit court dismissing her case. We affirm in part, reverse in part, and remand.

I

This cause of action involves plaintiff's exposure to a chemical known as ethylene oxide (EtO), a fumigant used, among other things, for sterilizing medical equipment. Plaintiff, who sterilized medical equipment as part of her job at the Westland Medical Center, claims she was exposed to EtO over a four-year span through defendant American Sterilizer Company's sterilizer machine, which leaked EtO in varying amounts during the four years she worked at the medical center.

Plaintiff instituted this cause of action claiming that her exposure to EtO caused certain neurological disorders, as well as a fatty infiltration of her liver, which adversely affected its ability to function.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

As a result of the contentious nature of the proceedings during discovery, plaintiff was limited to two causation experts, both of whom were her treating physicians. Defendants conducted a discovery-only deposition involving both of plaintiff's experts, questioning the experts in detail regarding the studies on which they relied to support their conclusions. The experts also testified that they performed differential diagnoses of plaintiff's condition and, after ruling out other possible causes of plaintiff's liver disease, concluded that plaintiff's liver impairment was caused by her exposure to EtO.

After discovery was complete, and a mere four days before the trial in this matter was to begin, defendants delivered to plaintiff their brief in support of their motion in limine to bar plaintiff's experts from testifying that EtO was the cause of plaintiff's liver disease. In their motion, defendants argued that plaintiff's experts' opinion that plaintiff's injuries were caused by EtO were unsupported by the data on which the experts relied.

The hearing on defendants' motion, which began on the first day of the scheduled trial, lasted three days. At the hearing, plaintiff objected to the motion, claiming that it was actually a motion for summary disposition, and plaintiff thus was not afforded the proper time in which to respond. The trial court agreed with plaintiff that the motion was "more than a motion in limine," but ultimately determined that plaintiff could not produce sufficient evidence to change the court's final decision, and thus it would be pointless to grant plaintiff additional time in which to respond.

In its oral opinion following the hearing, the trial court determined that while some scientific evidence could support plaintiff's experts' conclusions, the experts would be barred from testifying

because, the court concluded, plaintiff had not shown that the experts' opinions were generally recognized by the scientific community.

Although the lower court stated on the record that it did not believe it was relying on the *Davis-Frye*[1] rule in support of its conclusion, plaintiff submitted a motion for rehearing arguing, in part, that that rule was overruled by *Daubert v Merrel Dow Pharmaceuticals, Inc,* 509 US —; 113 S Ct 2786; 125 L Ed 2d 469 (1993). Plaintiff also submitted the affidavits of its two causation experts reaffirming their earlier deposition testimony, as well as the affidavit of a scientist regarding the biochemistry of EtO exposure in humans. Ultimately, the trial court denied plaintiff's motion, and plaintiff appealed to this Court.

II

Plaintiff first argues on appeal that her case should be remanded because defendants' motion regarding the testimony of the experts, while in the form of a motion in limine, was in substance a motion for summary disposition under MCR 2.116. Thus, plaintiff argues, she was denied the proper time in which to respond to defendants' motion. We agree with plaintiff that the court erred in its characterization of defendants' motion. We do not find, however, that the trial court's error requires a remand.

A

We conclude that defendants' motion was a motion for summary disposition because defendants were not arguing that the studies on which

[1] See *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923).

plaintiff's experts were relying were inadmissible; rather, defendants argued that the studies were insufficient to support the experts' conclusions. That defendants did not challenge the admissability of the studies themselves is clear: defendants relied on the articles in support of their own argument that plaintiff's experts should not be allowed to testify, claiming that the experts simply misunderstood the scientific evidence. We will not hear defendants complain about the admissibility of the studies and articles when they relied on them themselves.

Thus, as explained more fully below, the issue addressed by defendants is not related to the admissibility of the experts' testimony, but rather to whether the experts' opinions would create a material issue of fact, i.e., a sufficiency determination. See *Maiorana v US Mineral Products Co,* 52 F3d 1124 (CA 2, 1995).

Because defendants were actually attacking the sufficiency of the evidence supporting the experts' opinions, and not whether the evidence on which the experts relied was admissible, we agree with the trial court that defendants' motion was not merely a motion in limine, but in reality was a motion for summary disposition. Thus, the trial court erred in failing to grant plaintiff the proper time in which to respond to defendants' motion. See MCR 2.116(G)(1) and 2.119.

B

Although we conclude that the trial court erred in allowing defendants to proceed with their motion in limine, we decline to remand this case for further proceedings. We conclude for the purposes of this review that plaintiff, through the three-day evidentiary hearing, the affidavits submitted with

her motion for rehearing, and her appellate brief, created a sufficient record to allow this Court to make its determination.

### III

We now turn to the propriety of the trial court's decision to grant defendants' motion in limine, and dismiss plaintiff's case. We conclude the court erred in both of its rulings.

The court held plaintiff's experts' opinions to be inadmissible because the opinions were not generally accepted in the scientific community. In so doing, the trial court misapprehended its role in determining whether to admit the experts' testimony.

### A

First, we note that because the court granted, in reality, summary disposition to defendants, we review the court's ruling de novo. Like the trial court, we examine the record, granting the benefit of all reasonable doubts and inferences to plaintiff, to determine whether a record may be developed on which reasonable minds could differ. See *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991). Further, making findings of fact or weighing credibility while performing this task is impermissible. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994).

### B

Next, we deal with an issue that seems to have caused both parties and the trial court some confusion. Plaintiff argues on appeal that the trial court

improperly followed the *Davis-Frye* rule in determining whether to admit the experts' testimony. Plaintiff argues that that test was abolished by the United States Supreme Court in *Daubert, supra.* We conclude that neither the *Davis-Frye* rule, nor the rule set forth in *Daubert,* is applicable to this case.

In *Maiorana, supra* at 1132, a case that presents an issue similar to that before us, the court found *Daubert* to be inapplicable because

> [t]he *Daubert* opinion was primarily about admissibility. It focused on district courts' role in evaluating the methodology and the applicability of contested scientific evidence in admissibility decisions.

The court in *Maiorana* concluded that because the admissibility of the scientific tests and data on which the plaintiff's experts relied was not at issue, the question was actually one of sufficiency, or "whether the collective weight of a litigant's evidence is adequate to present a jury question." *Id.*

Here, we are confronted with a similar problem. As previously mentioned, defendants cannot argue that the scientific evidence on which plaintiff's experts rely is inadmissible. Rather, defendants' argument is that, because plaintiff's experts draw the wrong conclusions from the scientific evidence, the opinions are so worthless as to be irrelevant. Thus, the resolution of this issue does not involve the application of either the *Davis-Frye* rule or the rule set forth in *Daubert.*

c

We now turn to the merits of this case. Defendants argue, in support of the trial court's ruling,

that the trial court properly held plaintiff's experts' testimony inadmissible because their opinions were not based on reliable facts and data. See *Amorello v Monsanto Corp,* 186 Mich App 324; 463 NW2d 487 (1990). While we do not disagree with the reasoning in *Amorello,* when that opinion is read in the proper context, we conclude that it does not support defendants' position.

1

In *Amorello, supra* at 332, this Court determined that in order for an expert's opinion to be admissible, the following criteria must be met: (1) the facts and data on which the expert relies must be reliable, and (2) the opinion must assist the trier of fact.

The court in *Maiorana, supra,* expanded on the reliability element. There, the court held that when presented with an issue regarding the reliability of the evidence on which an expert relies, and thus regarding the reliability of the opinion itself,

> the question is not whether there is some dispute about the validity or force of a given study, but rather, whether it would be unreasonable for a rational jury to rely on that study to find causation by a preponderance of the evidence. [*Id.* at 1133.]

The court further held that the standard summary disposition review should be utilized to determine whether the expert's opinion is sufficiently supported to be presented to the jury. *Id.*

In cases such as this, then, where the challenge relates to the conclusions drawn from a given study, i.e., to the "force" of the study, the trial court's role is not to determine whether the con-

clusion is generally accepted by the scientific community, but whether a rational juror could reasonably rely on the study to find causation. In other words, the trial court must determine whether the conclusion drawn from the scientific evidence is so patently unrelated to the evidence that it is, as a matter of law, inadmissible. If the expert's conclusion passes this minimal test, then the weight to be given the opinion is to be determined by the jury.

2

Applying this standard to this case, we conclude that the trial court's rulings must be reversed. The record below does not· suggest that it would be unreasonable for a rational juror to rely on the studies relied on by plaintiff's experts. Indeed, the trial court recognized that fact when it stated, in regard to plaintiff's experts: "This is a legitimate inquiry they're making and these are legitimate attempts to find the relationship between toxins and disease." The true error of the trial court in its ruling to exclude the testimony, however, is demonstrated by its statement that the applicability and significance of the articles to the expert's opinions could be debated forever. It is axiomatic that in the courtroom, if an issue of fact is debatable, the resolution of that debate is best left to the jury. Once the court determined that the data on which the experts relied was admissible, and that their opinions had arguable merit, the only way it could then dismiss plaintiff's case was to resolve the issue presented by the opinions, something it is not permitted to do. *Skinner, supra.*

Our review of the evidence leaves us agreeing in part with the trial court: we cannot say with confidence that either plaintiff's or defendants'

position with regard to causation is correct. However, in apparent contrast to the trial court, we refuse to take this case away from the factfinder because we are "optimis[tic] about juries' abilities to sort out the veracity of competing scientific evidence." *Maiorana, supra,* citing *Daubert, supra.*

In reversing the trial court's rulings, we do not mean to suggest that plaintiff's experts have proven causation; rather, we conclude that the appropriate methods of challenging plaintiff's experts' opinions, which admittedly are not irrefutable,

> include the "traditional" devices of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." [*Maiorana, supra* at 1132.]

We specifically do not conclude, as the trial court did, that plaintiff's experts' opinions are inadmissible because they are not generally accepted by the scientific community. As the Court in *Daubert, supra* at 2795, noted, "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science."

3

Although we rely in part on the reasoning in *Amorello, supra,* we are not bound by that case to affirm the trial court's rulings below, because we find *Amorello* to be distinguishable from this case on its facts. In upholding the trial court's grant of summary disposition to the defendants, this Court in *Amorello, supra* at 332, noted:

> Plaintiffs offer[ed] no evidence to rebut defendants' claim that the testimony of plaintiffs' ex-

perts did not have a reasonable medical or reliable scientific basis and is not supported by scientific and medical literature.

That factual scenario is in stark contrast to this case where even a cursory review of the record demonstrates that plaintiff submitted various pieces of documentary evidence and three days of argument in an attempt to rebut defendants' inadmissibility claims.

Because we conclude that the trial court erred in making its rulings to exclude plaintiff's experts' testimony, and in dismissing plaintiff's case, we reverse the trial court's orders and reinstate plaintiff's case.

IV

Finally, plaintiff argues that the trial court abused its discretion in sanctioning plaintiff for breaching the court's discovery order by barring Dr. Lawrence Stawick from testifying with regard to causation. We disagree.

The trial court prevented Stawick's testimony because of plaintiff's continued inadequate response to defendants' interrogatories. A court's decision to grant discovery sanctions will not be overturned on appeal absent an abuse of discretion. See *Merit Mfg & Die, Inc v ITT Higbie Mfg Co*, 204 Mich App 16, 21; 514 NW2d 192 (1994). After a review of the record, we cannot say that the trial court abused its discretion in sanctioning plaintiff in this manner.

Because of our resolution of these issues, we need not address plaintiff's other appellate claims.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.