# STATE OF MICHIGAN

# COURT OF APPEALS

DEREK CAMPBELL and MEGHAN CAMPBELL,

Plaintiffs-Appellees,

v

CITY OF HUDSON,

Defendant-Appellant.

UNPUBLISHED
October 19, 2017

Nos. 332354; 334073
Lenawee Circuit Court
LC No. 15-005307-NZ

Before: SERVITTO, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

In Docket No. 332354, defendant appeals as of right a March 21, 2016 order denying its motion for summary disposition of claims brought by plaintiffs for damages caused by a sewage system backup and overflow into the basement of plaintiffs' home. Defendant's motion was brought under MCR 2.116(C)(7) and MCR 2.116(C)(10), and asserted governmental immunity from liability for plaintiffs' damages under MCL 691.1417(2). The trial court denied defendant's motion after determining that issues of fact remained. In Docket No. 334073, defendant appeals by leave granted[1] the same order denying defendant's motion for summary disposition on non-immunity grounds.

The relevant facts are not in dispute. At 2:45 p.m. on August 15, 2014, the City of Hudson Public Works Department (DPW) received a telephone call from a resident reporting a sewer system malfunction. DPW Superintendent Philip Goodlock responded immediately to the area of the sanitary sewer main located on Jefferson Street and determined that an unknown object was creating a blockage in the system. Goodlock called for two DPW workers to report to his location with a "jet truck," and the crew proceeded to jet the sewer line. According to Goodlock, the blockage was cleared almost immediately after they began the jetting process, about 15 minutes after the DPW received its initial report, and the water in the line began to flow as usual.

---

[1] *Campbell v City of Hudson*, unpublished order of the Court of Appeals, entered September 21, 2016 (Docket No. 334073).

-1-

At around 5:00 p.m. on August 15, 2014, plaintiffs discovered that sewage had backed up into their basement sink and toilet and spewed onto the floor, spreading out over the carpet of the main basement area at a depth of about an inch. Plaintiffs were unaware of any prior sewer backups at their Jefferson Street home. Plaintiffs rounded up their children and vacated the premises. Thereafter, two neighbors informed plaintiffs that the DPW had been working on the sewer earlier that day. Plaintiffs brought a complaint in the circuit court against defendant alleging gross negligence and inverse condemnation as a result of the "damage to and destruction of real and personal property" caused by the backup.

Defendant moved for summary disposition under MCR 2.116(C)(7) based on governmental immunity, or MCR 2.116(C)(10), for judgment as a matter of law, in the alternative. Specifically, defendant asserted that plaintiffs had failed to allege facts to prove two of the necessary elements to support the exception to governmental immunity from liability for sewage disposal system events under MCL 691.1417(2). Defendant also asserted that it was entitled to summary disposition of plaintiffs' inverse condemnation claim because "MCL 691.1416 to MCL 691.1419 provide 'the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory,' " and there was no evidence that defendant abused its legitimate powers or aimed any affirmative actions at plaintiffs' property.

The trial court denied defendant's motion after a hearing, concluding that "there are issues of fact that need to be heard by a jury." The instant appeal followed.

On appeal, defendant first argues that the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' tort claim because plaintiffs failed to prove that their claim fell within an exception to the general rule of governmental immunity. We agree.

"Governmental immunity is a question of law that is reviewed de novo." *Pierce v City of Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005). This Court also reviews de novo a trial court's decision on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Although the trial court did not specify, in its oral conclusions or written order, which subsection it considered before denying defendant's motion for summary disposition, defendant requested summary disposition on the ground of governmental immunity pursuant to MCR 2.116(C)(7) and MCR 2.116(C)(10).

"Under MCR 2.116(C)(7), the moving party is entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law." *Odom v Wayne County*, 482 Mich 459, 466; 760 NW2d 217 (2008) (quotation marks and citation omitted). "The moving party may support its motion for summary disposition under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, the substance of which would be admissible at trial." *Id.* (quotation marks and citations omitted). "When addressing a motion under subrule (C)(7), the trial court must accept as true the allegations of the complaint unless contradicted by the parties' documentary submissions." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 443; 761 NW2d 846 (2008). To survive a (C)(7) motion based on governmental immunity, the plaintiff must allege facts justifying the application of an exception to governmental immunity. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). "If no [material] facts are in dispute, or if reasonable minds could not differ regarding

-2-

the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce*, 265 Mich App at 177, citing *Maiden v Rozwood*, 461 Mich 109, 120-122; 597 NW2d 817 (1999).

Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). Courts consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Const, Inc v Gen Shale Brick, Inc,* 284 Mich App 25, 29; 772 NW2d 801 (2009). A party opposing summary disposition under MCR 2.116(C)(10) may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *Oliver v Smith*, 269 Mich App 560, 564; 715 NW2d 314 (2006). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id*.

"The scope of governmental immunity is construed broadly, while exceptions to it are construed narrowly." *Linton v Arenac County Road Com'n*, 273 Mich App 107, 112; 729 NW2d 883 (2006). Pursuant to MCL 691.1417(2), "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." A sewage disposal system event is defined as the overflow or backup of a sewage disposal system onto real property. MCL 691.1416(k). To circumvent the application of governmental immunity in cases involving a sewage disposal system event, a claimant must show that all of the following existed at the time of the event:

(a) The governmental agency was an appropriate governmental agency.

(b) The sewage disposal system had a defect.

(c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.

(d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.

(e) The defect was a substantial proximate cause of the event and the property damage or physical injury. [*Willett v Charter Twp of Waterford*, 271 Mich App 38, 49; 718 NW2d 386 (2006), quoting MCL 691.1417(3).]

Here, the parties do not dispute that the first three elements of the exception have been met. Defendant is an appropriate governmental agency, and the sewage disposal system connected to plaintiffs' residence suffered a defect—a blockage—on the date in question. See *Willett*, 271 Mich App at 51-52 (concluding that an obstruction of the sewer by a foreign object constitutes a "defect" for purposes of MCL 691.1417(3)(b)). And although defendant argues in its appellate brief that plaintiffs failed to prove that defendant knew or should have known of the defect, defendant concedes that it became aware of the defect when it received a report around 2:45 p.m. on the day of the incident. Plaintiffs have not alleged or set forth facts to suggest that,

through an exercise of reasonable diligence, defendant should have known of the defect any earlier than that time. Thus, only the final two elements of MCL 691.1417(3)—that defendant "failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect," and that "the defect was a substantial proximate cause of the event and the property damage"—were in dispute during the summary disposition proceedings below.

The trial court denied defendant's motion for summary disposition, broadly concluding that issues of fact remained to be determined by a jury. However, the trial court failed to articulate on the record or in its written order what issues of fact precluded summary disposition in defendant's favor. It is the trial court's obligation to ensure that its reasoning is adequately presented for review, and the trial court here failed to meet this obligation. Regardless, this Court's review is not precluded. The record is before this Court and a review of the trial court's decision to grant or deny summary disposition is de novo. *Loweke*, 489 Mich at 162.

Based on discussions at the hearing on defendant's motion for summary disposition, this Court can infer that the trial court denied the motion because genuine issues of material fact remained on the matter of causation. Both parties spent a considerable amount of time at the hearing debating the issue of causation. On appeal, the parties devote much of their briefing to the same issue. Defendant argues that because plaintiffs failed to produce documentary evidence to rebut the affidavit of an expert opining that defendant's actions were not a substantial cause of plaintiffs' injuries, no genuine issue of material fact exists with respect to causation. In response, plaintiffs argue that their failure to rebut the opinion of defendant's expert with the opinion of another expert does not negate the common sense dispute over this material fact.

We agree with plaintiffs that production of a competing expert is not a requirement that a party must meet in order to establish a genuine issue of material fact regarding the issue of causation. "Summary disposition is not precluded simply because a party has produced an expert to support its position," *Amorello v Monsanto Corp*, 186 Mich App 324, 331; 463 NW2d 487 (1990), nor is it mandated. Credibility of experts is a matter for the jury, *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 88-89; 776 NW2d 114 (2009), and failure of causation is rarely an appropriate ground for summary disposition under MCR 2.116(C)(10), *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). The expert opinion offered by defendant is itself inconclusive, suggesting only that "more likely than not," defendant's actions did not directly cause the sewage backup. Rather, the expert suggests that defendant's actions in jetting the sewer main catalyzed "a suction effect from poor maintenance of the Plaintiffs' lateral service lead." Defendant's expert does not suggest that this "suction effect" would have occurred absent defendant's action in jetting the sewer main.

Despite defendant's argument to the contrary, there are facts in the record which, viewed in a light most favorable to plaintiffs, support an inference that defendant's actions caused, either directly or indirectly, plaintiffs' injury. Defendant admits that it jetted the sewer main to clear a blockage between 15 and 30 minutes before plaintiffs' children discovered the backup of sewage into plaintiffs' basement. Defendant admitted to jetting the sewer main on Jefferson Street, mere houses away from plaintiffs' residence, pushing water through the sewer directly past the lateral line connected to plaintiffs' home. Defendant's expert confirms that defendant's action in jetting the sewer main was, at least, an indirect cause of the backup of sewage into plaintiffs' home. To preclude summary disposition on the issue of causation, plaintiffs only needed to set forth

specific facts to "support a reasonable inference of a logical sequence of cause and effect." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004) (quotation marks and citation omitted). Plaintiffs met that burden here.

However, the fact that questions remain regarding the element of causation is not enough to preclude summary disposition in defendant's favor. Plaintiffs were required to set forth evidence to meet all five elements of MCL 691.1417(3) before liability could be imposed on defendant for the sewage disposal system event, and their failure to meet any one of the elements should have resulted in summary disposition in favor of defendant. See *Willett*, 271 Mich App at 49-50. Although in their amended complaint, plaintiffs broadly alleged that "[d]efendant failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect," they failed to present any evidence to support their allegation. After reviewing the record evidence in its entirety, we can find no factual basis to conclude that defendant failed to take reasonable steps within a reasonable amount of time to remove the sewer system blockage and restore the sewer system to its proper order. To the contrary, the record indicates that defendant responded to survey the area of the blockage within minutes after receiving the initial report, and deployed a jet truck to the area promptly. The blockage was cleared and the sewer system fully functional only 15 minutes later.

In *Willett*, 271 Mich App 38, this Court considered a situation nearly identical to the one presented here. The plaintiff and one of the plaintiff's neighbors experienced a backup of sewage into their basements shortly after a worker for the defendant was seen opening a manhole cover nearby. *Id*. at 40. The plaintiff's neighbor reported the incident, and the defendant discovered a blockage in the sewer system. *Id*. Within an hour of the report, the defendant used a jet truck to dislodge the blockage. *Id*. at 41-42. The plaintiff later sued the defendant under the exception to governmental liability for sanitary sewer disposal systems, MCL 691.1417, arguing in part that the defendant had failed to take reasonable steps within a reasonable amount of time to cure the defect in the sewer system. *Id*. at 43. Ultimately, the trial court granted summary disposition in favor of the defendant. *Id*. at 44. This Court affirmed the decision, concluding as follows:

> In fact, contrary to plaintiff's allegations, the evidence indicates that within minutes after receiving notice of the problem [blockage by an unknown foreign object], defendant dispatched its crew to the area, and the crew remedied the problem promptly. In the early afternoon of the same day that plaintiff's wife reported the sewage backup, defendant deployed a jet truck that dislodged the obstruction. Defendant accomplished this by approximately 1:30 p.m., after receiving the telephone call regarding the problem at approximately 11:00 a.m. We conclude that reasonable minds could not differ that 2 1/2 hours to locate and resolve a sewer backup of unknown cause or origin is a reasonable amount of time. Thus, plaintiff failed to support the fourth required element with evidence. [*Id*. at 53.]

This case is on four corners with *Willett*, and we reach the same conclusion. Reasonable minds could not differ that 15 minutes to resolve a sewer system defect is a reasonable amount of time.

Further, the record contains no evidence to suggest that defendant's use of a jet truck to clear the blockage was an unreasonable method for remedying the sewer system defect. Again, to the contrary, the record evidence suggests that defendant's use of the jet truck was customary and appropriate. Defendant presented evidence that use of the jet truck for periodic maintenance of the sewer lines and removal of unanticipated blockages was standard procedure, and had been for many years. There is no evidence that any other residents experienced sewage backups as a result of defendant's use of the jet truck on the date of the incident or at any other time. Defendant presented the testimony of a professional engineer with over 20 years' experience in water and sewer utility systems, who opined that defendant's use of the jet truck to clear blockages was "customary and appropriate." There is no evidence in the record to dispute the expert opinion, or any evidence to suggest that defendant could or should have employed any other method to remove the blockage. Reasonable minds could not differ that defendant's use of the jet truck to remedy the sewer system defect was nothing other than a sound response.

The trial court erred when it denied defendant's motion for summary disposition because plaintiffs failed to set forth any evidence that defendant "failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect," and were therefore not entitled to invoke the exception to governmental immunity offered by MCL 691.1417(3). Summary disposition of plaintiffs' tort claim in favor of defendants was appropriate under MCR 2.116(C)(7) and MCR 2.116(C)(10).

Next, defendant argues that the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' inverse condemnation claim because (1) the claim is barred under the plain language of MCL 691.1417(2), and (2) plaintiffs failed to present evidence to support an inverse condemnation claim. We agree in part.

This Court "review[s] de novo constitutional issues and any other questions of law that are raised on appeal." *Cummins v Robinson Twp*, 283 Mich App 677, 690; 770 NW2d 421 (2009). This Court also reviews the applicability of governmental immunity de novo. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 279; 769 NW2d 234 (2009).

Plaintiffs brought a claim of inverse condemnation against defendant, arguing that the backup of sewage into their basement from defendant's sanitary sewer system represents a de facto "taking" of their property requiring just compensation. In response, defendant argues that plaintiffs' inverse condemnation is barred by the plain language of MCL 691.1417(2), which states:

> A governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency. *Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.* [Emphasis added.]

Defendant asserts that the plain language of MCL 691.1417(2) prohibits *any* other cause of action against a governmental agency, regardless of legal theory, arising from a sewage disposal system event.

Defendant's argument lacks merit. "Both the United States and Michigan constitutions prohibit the taking of private property for public use without just compensation." *Wiggins v City of Burton*, 291 Mich App 532, 571; 805 NW2d 517 (2011), citing US Const, Am V; Const 1963, art 10, § 2. "[A]n action that establishes an unconstitutional taking may not be limited except as provided by the Constitution because of the preeminence of the Constitution." *Hinojosa v Department of Natural Resources*, 263 Mich App 537, 546; 688 NW2d 550 (2004); see also *Burdette v Michigan*, 166 Mich App 406, 408; 421 NW2d 185 (1988) ("Governmental immunity is not available in a state court action where it is alleged that the state has violated a right conferred by the Michigan Constitution."). Inverse condemnation is a constitutional tort claim. *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 91 n 38; 445 NW2d 61 (1989). "The government, therefore, 'cannot excuse its tortious taking of private property by invoking the shibboleth of governmental function.' " *Peterman v State Dept of Natural Resources*, 446 Mich 177, 205; 521 NW2d 499 (1994), quoting *Defnet v Detroit*, 327 Mich 254, 258; 41 NW2d 539 (1950). The prohibitions of the governmental immunity statute cannot preclude defendant's liability for constitutional tort claims, including inverse condemnation.

However, we agree that plaintiffs' inverse condemnation claim fails on its merits regardless of whether it is barred by the governmental immunity statute. We conclude that the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' inverse condemnation claim under MCR 2.116(C)(10) because plaintiffs failed to set forth any evidence of permanent deprivation or an affirmative action by defendant specifically directed at plaintiffs' property.

"Inverse condemnation is " 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the government defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.' " *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 129; 680 NW2d 485 (2004) (citation omitted). "A taking for purposes of inverse condemnation means that governmental action has *permanently deprived* the property owner of any possession or use of the property." *Froling Trust*, 283 Mich App at 294 (2009) (emphasis added). This Court has explained the concept of inverse condemnation as follows:

> What governmental action constitutes a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. No precise formula exists. Pertinent factors include whether "the governmental entity abused its exercise of legitimate eminent domain power to plaintiff's detriment." Further, a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages. A plaintiff alleging a de facto taking or inverse condemnation must prove "that the government's actions were a substantial cause of the decline of his property's value" and also "establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property." [*Hinojosa*, 263 Mich App at 548-549 (citations omitted).]

Not every injury to property remotely associated with governmental actions will amount to a taking. *Attorney General v Ankersen*, 148 Mich App 524, 561; 385 NW2d 658 (1986). "In determining whether a taking occurred, the form, intensity, and deliberateness of the governmental actions toward the injured party's property must be examined." *Froling Trust*, 283 Mich App at 295. Further, "[f]or a taking to occur, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of property." *Id*. (quotation marks and citation omitted.)

As previously discussed, there are facts in the record which, viewed in a light most favorable to plaintiffs, support an inference that defendant's actions caused, either directly or indirectly, plaintiffs' injury. However, plaintiffs' inverse condemnation claim fails, regardless of the remaining issue of causation, because plaintiffs have not alleged or set forth any evidence to support the crucial element of permanence—either in the form of permanent deprivation of property or decline in property value. "It is well settled that a governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property." *Wiggins*, 291 Mich App at 572, citing *Peterman*, 446 Mich at 189 n 16. However, as the United States Supreme Court observed in *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419, 427; 102 S Ct 3164; 73 L Ed 2d 868 (1982), courts have "consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential damages within, on the other. A taking has always been found only in the former situation." Even if defendant's action of jetting the sewer main caused, directly or indirectly, the backup of sewage into plaintiffs' home, plaintiffs' inverse condemnation claim must fail on its merits because plaintiffs have not argued that the damage suffered is a permanent deprivation of the use of their property or a substantial decline in the value of their property. Indeed, in their amended complaint, plaintiffs requested damages only for "temporary" loss of real and personal property. Temporary damage simply does not support a cause of action for inverse condemnation.

Further, although in their complaint plaintiffs allege that "[d]efendant's affirmative actions of blasting and otherwise trying to remove the obstruction in the sewage line constituted and resulted in an unlawful damaging and taking and inverse condemnation by [d]efendant," plaintiffs have failed to set forth facts suggesting that defendant took any affirmative action *directly aimed at plaintiffs' property*. It was the plaintiffs' burden to allege facts to support their claim. *Oliver*, 269 Mich App at 564. In this case, plaintiffs failed to establish that defendants directed any action toward their property and caused damage, or that any alleged damage was of a permanent nature. Summary disposition of plaintiffs' inverse condemnation claim in favor of defendant was therefore appropriate. *Id*.

Reversed and remanded for entry of summary disposition in favor of defendant. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens

-8-