# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF EARL KING, by EARL KING, JR.,
Personal Representative, and EARL KING,

Plaintiffs-Appellees,

v

CHRISTOPHER SAWYERS,

Defendant-Appellant.

UNPUBLISHED
October 26, 2017

No. 332178
Wayne Circuit Court
LC No. 14-002479-NI

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] an order denying defendant's renewed motion for summary disposition in this negligence action. We reverse.

This matter arises out of an accident that occurred at approximately 6:20 a.m. on January 9, 2014. Plaintiff,[2] Earl King, was crossing Middlebelt Road in Inkster when defendant, who was driving southbound, struck King, severely injuring him. King later died of the injuries. King, an African-American man, was wearing a black knit hat, a black coat, and black pants. At the time of the accident, the sky was dark, ice had formed on the ground, and snow was blowing. It is apparently undisputed, at least for purposes of the instant summary disposition motion, that defendant was driving well below the posted speed limit and had his headlights on. Defendant had been stopped at a red traffic light at the intersection with Michigan Avenue, and stated that he had just crested a hill after proceeding through the intersection when he struck King. The only known eyewitness to the accident is defendant, and the only other direct observations of the scene come from a police report. King was not able to speak with anyone about the accident before his death.

---

[1] *Estate of Earl King v Christopher Sawyers*, unpublished order of the Court of Appeals, entered September 2, 2016 (Docket No. 332178).

[2] Although Earl King is a named party, the only party technically participating as a plaintiff in this matter is his estate, through his son, Earl King, Jr., who is only acting in his capacity as personal representative.

-1-

For clarity, it is worth noting the configuration of the intersection and some pertinent landmarks. Michigan Avenue crosses Middlebelt Road at a slight angle, and it does so as a divided road. There is a crosswalk with some form of street lighting where the roads actually intersect. Further south, there are bus stops on both sides of the road; another bus stop is located on Michigan Avenue itself. Apparently, King's normal commute to work entailed taking a bus to the bus stop on the East side of Middlebelt Road, and then needing to cross Middlebelt Road to reach the Michigan Avenue bus stop, from which he took the bus to work. Defendant and the police accident report both stated that the accident occurred 200 feet south of the intersection with Michigan Avenue. Defendant stated that King appeared suddenly in front of him, and he was unable to stop in time to avoid the collision. Significant to the instant appeal, plaintiff retained as an expert witness, Sammie Hall, a former police officer who opined that in fact King had been walking "in or near" the crosswalk and, given his advanced age and need for a cane, could not have been in the road for less than twenty seconds by the time of the collision.

Under MCL 500.3135(1), "A person remains subject to tort liability . . . caused by his . . . use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Plaintiff brought the instant negligence claim on the theory that defendant had failed to drive with an "assured, clear distance ahead" as required by MCL 257.627(1), and had failed to exercise the due care required at common law. The statutory "assured clear distance ahead rule says, in essence, that a driver shall not operate his vehicle so fast that he cannot bring it to a complete stop within that distance ahead of him in which he can clearly perceive any object that might appear in his path." *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958). At common law, a driver must "exercise due care . . . [and] must make reasonable allowance for traffic conditions, for fog, snow, or other adverse weather conditions, and for curves and road conditions." *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967).

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id.* at 120. We review de novo a trial court's interpretation of a rule of evidence and determination of whether evidence is admissible; but we review for an abuse of discretion the trial court's decision whether to admit admissible evidence and performance of its evaluation of the qualifications of an expert witness or reliability of expert testimony. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126-127; 732 NW2d 578 (2007) (DAVIS, J).

The evidence other than Hall's affidavit and deposition testimony unequivocally established that the only direct eyewitness to the accident was defendant, and the only other available direct evidence of the immediate aftermath was a police report. King's son admitted that he did not witness the accident, had no personal knowledge of the accident, received no information about the accident from King himself, and only gleaned his understanding of the accident from the police report. The crash report and defendant's affidavit establish that: (1) it was dark at the time of the accident; (2) the conditions were icy and snow was blowing; (3) defendant was driving cautiously because of the conditions at approximately 25 miles per hour,

well below the 40 miles per hour posted speed limit; (4) defendant's vehicle was in good condition and he had the vehicle's headlamps illuminated; (5) plaintiff, a black male, was wearing all black clothing; (6) defendant did not see King until about 200 feet south of Michigan Avenue when King "stepped directly in front" of defendant's vehicle "without warning"; (7) defendant's vehicle, after striking King, slid to the left; (8) defendant rendered aid and called 911; and (9) defendant was not issued a citation.

"While it is true . . . a violation of the assured-clear-distance-ahead statute constitutes negligence per se, such presumption is overcome and such negligence is found not to exist when the collision is proven to have occurred in the midst of a sudden emergency not of defendants' making." *McKinney v Anderson*, 373 Mich 414, 419; 129 NW2d 851 (1964). This exception occurs in a situation that is "unusual or unsuspected." *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971). A driver need not "guard against every conceivable result, to take extravagant precautions, to exercise undue care." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). Negligence cannot be found where a person "darted" into a defendant's car and the defendant "had not seen [the] plaintiff." *Houck v Carigan*, 359 Mich 224, 227; 102 NW2d 191 (1960). Consequently, uncontested evidence that King suddenly stepped directly in front of defendant's vehicle, especially while wearing entirely black clothing in an obviously poorly-illuminated part of a road at night in adverse weather conditions, and that defendant was not apparently otherwise driving in a negligent or improper manner, would avoid strict application of the assured clear distance rule and mandate summary disposition in defendant's favor.

Therefore, the critical issue is whether Hall's affidavit, which contests critical aspects of the other evidence, was properly considered. "Summary disposition is not precluded simply because a party has produced an expert to support its position. The expert's opinion must be admissible." *Amorello v Monsanto Corp*, 186 Mich App 324, 331; 463 NW2d 487 (1990). An expert's opinion must not be speculative. *Edry v Adelman*, 486 Mich 634, 642 n 6; 786 NW2d 567 (2010). Finally, an expert's opinion must be based on established evidence and cannot rely entirely on disparaging the personal observations of eyewitnesses. *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 286; 602 NW2d 854 (1999).

Some portions of Hall's affidavit are clearly incorrect and clearly outside Hall's expertise. Hall is not an attorney, and even if he were, the court would be obligated to draw its own independent conclusions about what is or is not mandated by law. More specifically, Hall opined that pursuant to MCL 257.684, which requires the activation of headlights on vehicles "when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead" meant that defendant should have seen "any object within approximately 500 feet" and thus should have seen King for 13 seconds before impact. MCL 257.684 does not prescribe any particular functional requirements for headlights, but rather environmental conditions under which they must be activated. Some other provisions of the Michigan Vehicle Code do appear to suggest that headlights should be visible "*from* a distance of 500 feet" (emphasis added). See, e.g., MCL 257.695(a), MCL 257.686(1). Furthermore, MCL 257.684 is arguably poorly drafted. See *Johnson v Miller*, 358 Mich 529; 100 NW2d 275 (1960).

It is arguable that one can *infer* that headlights should be visible from 500 feet; however, that nevertheless only specifies visibility *of the headlights* from a perspective 500 feet ahead, not

-3-

necessarily whether anything 500 feet ahead would be illuminated well enough to be seen from the vehicle. Additionally, the statutes do not account for weather conditions. In any event, Hall's opinion necessarily implies a static object, which King would not have been irrespective of whether he "darted" into the road. Furthermore, King's choice of black attire at night and under poor visibility would necessarily interfere with his visibility. In fact, Hall admits he is unable to determine how the conditions on the day of the accident would have affected visibility.

Hall calculated the amount of time King was in the road based on his walking speed. Hall opined that King, as an 82-year-old man using a cane, walked at a rate of 1.5 miles per hour. Notwithstanding the fact that King may have instead been stationary in the road and not moving at all, Hall based this conclusion on his "personal opinion relevant to my experience." Accordingly, Hall's conclusion is not an admissible expert opinion. See *Edry*, 486 Mich at 642 ("Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible."). Even presuming the accuracy of King's speed, we find that Hall's conclusion that defendant should have been able to see King for 13 seconds to be speculative, based on unreliable data, and based on an inaccurate understanding of MCL 257.684 and the implications thereof. MRE 702.

Hall stated in his affidavit that King was walking "in or near the south crosswalk at Michigan Ave.," contrary to defendant's testimony that the impact occurred 200 feet or so south of the crosswalk. This conclusion is not necessarily entirely based on disregarding the evidence: Hall indicated that he drew this conclusion because King would have been "thrown" some distance due to the impact of the collision, which is reasonable enough *per se*. Specifically, Hall opined that King was actually hit about 80 to 100 feet prior to the location stated on the crash report. Because the crosswalk was presumably some distance south of Michigan Avenue, this would presumably place the point of impact close to or in the crosswalk. However, Hall relied on the police report ostensibly stating that King was found 200 feet south of Michigan Avenue. The problem is that we cannot find any such statement in the police report, which appears not to specify the point of determined impact *or* the point where King was found. Rather, it simply lists the "location" as "200 feet south" on Middlebelt in a form field. We find it reasonable and non-speculative for Hall to render expert opinion that King was struck 80 to 100 feet north of where he was found, but on the basis of the police report alone, it is not possible to place King in or near the crosswalk on that basis. According to defendant, the *impact* occurred 200 feet south of Michigan Avenue, the police report does not clearly challenge that assertion, and Hall therefore has no basis for concluding otherwise that does not involve speculating as to the intended meaning of "location" in the police report. We are forced to find Hall's conclusion that King was in the crosswalk necessarily speculative. MRE 702.

Excluding Hall's affidavit, there is no evidence in the record that defendant was negligent. The record demonstrates defendant was driving carefully and that King created an unsuspected emergency, not of defendant's making, when he stepped out in front defendant's

vehicle some distance outside the crosswalk. Therefore, the trial court erred when it denied defendant's renewed motion for summary disposition.

Reversed.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause